**James Kenneth UTLEY, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 73S00–8910–CR–736.**

Supreme Court of Indiana.

April 1, 1992.

Michael J. McDaniel, McDaniel, Biggs & Ollis, New Albany, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

Appellant was tried by a jury and convicted of two counts of Murder and one count of Burglary, a Class A Felony. The jury was unable to reach a recommendation regarding the death penalty. The trial court took into consideration aggravating and mitigating circumstances, found that the aggravators outweighed the mitigators, and enhanced the sentence given on each count. He was sentenced to sixty (60) years for Murder, Count I; sixty (60) years for Murder, Count II; and fifty (50) years for Burglary, Count III, the sentences to be served consecutively.

The facts are: On February 18, 1988, Dexter Smith left his residence on Cole Road near New Washington, in Clark County, Indiana at approximately 12:45 p.m. When he left, his wife, Karen, and his three-year-old daughter, Jackie, were at home and his six-year-old daughter, Jessica, was at school. Jackie Fouts, Jessica's scout leader, called and spoke with Karen from approximately 1:00 to 1:15 p.m. When Karen failed to appear for her daughter's scout meeting at 3:00 p.m., Fouts took Jessica to Fouts' house and called Karen's mother-in-law, Maggie Smith. Smith and Janeen Cook, Smith's

daughter, went to Karen's residence where they found the rear door unlocked and the bodies of Karen and Jackie inside. Karen's blue car was not at the residence but was found several miles away on Ira Taylor Road with the doors locked and keys gone.

The State presented testimony from David Cole, Lisa Siewert, and Howard Smith that between 12:30 and 1:05 p.m. they each, independently, saw a dark haired, heavy set person walking on Cole Road in the direction of the Smith residence. Agnes Burgin testified that at approximately 4:00 p.m. that day she saw a person wearing red getting out of a blue car in a ditch on Ira Taylor Road. Charles Burgin testified that at approximately 4:10 to 4:15 p.m. he saw a heavy set man in his late teens or early twenties wearing blue clothing and a red shirt or sweater walking off Ira Taylor Road onto Nabb–New Washington Road. Charles Burgin also saw a blue car which appeared to have broken down. These witnesses identified appellant, prior to charges being filed against him, as well as in court, as the man they had seen that day.

On February 23, 1988, police officers photographed appellant and fingerprinted him because he fit the description given by the witnesses. The next day appellant told police that he had not left his property on the day of the murders and that some friends had visited him early that afternoon. Appellant's friends, however, stated that they visited him after dark on the evening of the 18th. He also told police that the only gun on the premises was a .38 caliber pistol, that two .22 caliber pistols had been stolen. As the officers prepared to leave, appellant asked them if they would be coming back the next day to arrest him.

Later that day, appellant's father told police that they had two .22 caliber pistols on the property. He agreed to bring the pistols in for testing. However, appellant and his father produced only one pistol and claimed that appellant had sold the other one. Police obtained a search warrant and found a .22 caliber revolver in appellant's bedroom. Police also seized items of appel-

lant's clothing which matched the description of the clothing worn by the suspect. Appellant fled, but later surrendered to police. On February 28, 1988, appellant was arrested, and his photograph appeared in the newspaper and on television.

A ballistics expert testified for the State that positive identification of the gun was impossible but that it appeared to be the one used to shoot the victims. The expert's opinion was based upon the fact that land and groove characteristics of the gun matched those of a bullet recovered from one of the victims and that a distinct skid mark on test-fired bullets matched that of the bullet recovered from one of the victims.

While in jail, appellant told another inmate, Roger Hall, that he was the one who had committed the double murder. Hall apparently stated that he couldn't understand why appellant would commit the crimes, especially killing the child. Appellant stated that he had been "high" when he murdered the victims and that he had tried to kill himself three times since the incident.

Autopsies of the victims' bodies were conducted on February 19, 1988. Both victims sustained gunshot wounds to the head, which were determined to be the cause of both deaths.

Appellant argues that the trial court erred when it denied his motion to suppress a Ruger .22 caliber revolver, two live .22 caliber rounds, and items of clothing recovered from appellant's residence because, he claims, the search warrant was invalid. Appellant argues that suppression was required because the affidavit failed to establish probable cause for issuance of the search warrant, that the warrant contained false statements and material omissions which rendered it invalid, and that the "good faith" exception does not validate the search.

In the case at bar, Officer Fred Smith, the affiant and detective in charge of the investigation of the crimes, testified that the information contained in the affidavit for the search warrant was not based upon information he had obtained personally, but

for the most part upon information obtained by officers to whom he had delegated part of the investigation. Smith's affidavit states that he had information from witnesses placing someone resembling appellant near the scene of the crimes on that date. Appellant attempted to lie about his whereabouts at the time of the murders. Appellant attempted to manufacture a false alibi. Appellant first claimed that the only gun at his residence was a .38 caliber pistol, yet when confronted by the police stated that his family owned one .22 caliber pistol at the present time. Appellant claimed those guns were stolen and his father had stated previously that they currently owned two .22 caliber pistols. Tests showed that the weapon used in the murders was a .22 caliber gun.

■ Appellant's first argument in support of suppressing the evidence is that the search warrant affidavit is defective on its face because it fails to establish probable cause for the search. An affidavit demonstrates probable cause to search premises if it provides a sufficient basis of fact to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime. *State v. Allen* (1988), Ind.App., 525 N.E.2d 1267. The decision to issue the warrant should be based on the facts stated in the affidavit and the rational and reasonable inferences drawn therefrom. *Blalock v. State* (1985), Ind., 483 N.E.2d 439. Sufficiency need not rest on a single piece of information, but rather in the way the pieces fit together. *Culver v. State* (1988), Ind.App., 519 N.E.2d 196. Based on the information presented in the affidavit by the officer, it was reasonable for the judge to have found probable cause to issue the search warrant.

■ Appellant's next contention in support of suppression of the evidence is that the affidavit contains false statements. Appellant relies on *Franks v. Delaware* (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667. In *Franks*, the United States Supreme Court held that where a defendant makes a substantial showing that a false statement knowingly and intentionally, or with reckless disregard for the truth,

was included in the affidavit, and if the allegedly false statement is necessary to the finding of probable cause, that information must be excised. If the remaining information in the affidavit is insufficient to establish probable cause, then the search warrant must be voided and the fruits of the search must be suppressed.

Appellant contends that the following statements contained in the affidavit are false: 1) that the description of the suspect came from four school bus drivers; 2) that Agnes Burgin was attributed with giving a full description of the suspect, when she stated only that the man was wearing red; 3) that David Cole observed a person matching appellant's description driving the victim's car; and 4) that red fibers had been found in the victim's car.

■ Appellant contends that Officer Smith's testimony that he did not have personal knowledge of all the information in the affidavit, specifically that he had not spoken personally with the bus drivers who gave a description of the suspect, shows that the affidavit was prepared with recklessness, thereby violating *Franks*. However, as long as participating officers seeking the issuance of a search warrant collectively have probable cause, their individual knowledge can be imputed to the officer signing the affidavit in support of the search warrant. *Williams v. State* (1988), Ind.App., 528 N.E.2d 496. Appellant's argument fails here because other officers to whom a part of the investigation was delegated did take the descriptions from the witnesses.

Appellant contends that the aforementioned information contained in the affidavit was false. We have held that in order to prevail upon the contention that the affidavit for a search warrant contains information known by the affiant to be false, the appellant must show that the relevant matter as expressed in the affidavit was untrue. *Phelan v. State* (1980), 273 Ind. 542, 406 N.E.2d 237. Moreover, we have held that mistakes and inaccuracies of fact stated in a search or arrest warrant affidavit will not vitiate the reliability of the affidavits so long as such mistakes were

innocently made. *Johnson v. State* (1985), Ind., 472 N.E.2d 892, *reh'g denied.*

At the suppression hearing, Officer Smith testified that red fibers were recovered from the victim's vehicle, although tests had not yet been conducted at the time of the application for the search warrant. Smith testified that he mistakenly attributed to one witness information which had come from another witness. Further, David Cole was unable to give a physical description of the person he saw driving the victim's car.

■ In the present case, Detective Smith was in charge of an extensive investigation involving many officers and information coming from many sources. The inaccuracies referred to by appellant are *de minimis* when compared to the substance of the affidavit which remains, i.e., the pattern of falsehoods engaged in by appellant in his conversations with the police regarding his whereabouts and possession of weapons. Therefore, his challenge of the affidavit fails in this regard. *See Johnson, supra.* The police had a general description of the suspect, and appellant matched that description. Appellant has failed to demonstrate purposeful misrepresentation on the part of Officer Smith by his inclusion of the challenged statements, and probable cause would still exist if an excision of the challenged statements were necessary. *See Murphy v. State* (1983), Ind., 453 N.E.2d 219.

Contrary to appellant's contention the good faith doctrine of *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, would apply to the facts in the case at bar. Any errors in the affidavit were non-deliberate. The affidavit is free from obvious defects other than non-deliberate errors made in its preparation. Ind. Code § 35–37–4–5(b)(1)(A). The trial court did not err in denying appellant's motion to suppress.

Appellant argues the trial court erred when it refused to suppress the identification testimony of four witnesses: David Cole, Charles Burgin, Lisa Siewert, and Howard Smith. Appellant contends that photographic arrays shown to these witnesses were impermissibly suggestive, and that none of the witnesses had an adequately independent basis for making an identification of appellant.

The photographic display shown to Siewert, Cole, and Burgin on February 23, 1988, contained three photographs. Those photographs included one front view of one individual and a front and a side view of appellant. The subjects were similar in age, weight, and body type. Each of the witnesses previously had given a description of the suspect to the police.

On March 1, 1988, Siewert and Cole were shown a second photographic array comprised of five photographs. Siewert and Cole each, independently, selected appellant's photograph from the array. Smith was shown a six photograph array, containing both the front and side view photos of appellant. Each witness positively identified appellant from the photographic arrays, as well as at trial, as the person they had seen on the day of the murders. These witnesses testified that there was nothing about the actions or words of the officers which suggested to them which photograph they should select.

■ The suggestiveness of an identification procedure may be determined by the degree to which the circumstances of the procedure and the actions of the police officers indicate to the witness which suspect to "identify." *Hall v. State* (1978), 269 Ind. 24, 378 N.E.2d 823. Claims in the area of photographic displays should be evaluated in light of the total circumstances and with consideration of the facts of each case. *Williams v. State* (1984), Ind., 465 N.E.2d 1102.

■ In *Hollonquest v. State* (1979), 272 Ind. 380, 398 N.E.2d 655, we held that the presence of two photographs of the same person in a photographic array would not tend to suggest to a significant degree to the viewer that the police considered the individual to be a prime suspect. We also have held that in-court identification of a defendant was proper where the witness had been shown only one photograph, that being of the defendant, and was told that it

was the defendant who was depicted in the photograph. The in-court identification was proper because the witness had given a detailed description of the perpetrator of the crime to the police prior to being shown the photograph, and a composite drawing based on that description had led the police to recognize the defendant as the person being described. *Smith v. State* (1990), Ind., 553 N.E.2d 832. The trial court was correct in finding that the photographic array and procedure was not unduly suggestive.

■ Regardless of suggestiveness, in-court identification need not be suppressed if the totality of the circumstances shows the witness had a basis for identification independent of the contested photographic array. *Wolfe v. State* (1990), Ind., 562 N.E.2d 414. The witnesses in the case at bar possessed independently reliable memories of the person seen to support admission of their in-court identification testimony.

■ Factors relevant to the determination of whether an independent basis exists to support the admission of an in-court identification in light of the prior suggestive confrontation are the amount of time the witness was in the presence of the perpetrator, the amount of attention the witness focused on the perpetrator, the distance between the two, the lighting conditions, the witness' capacity for observation, the witness' opportunity to perceive particular characteristics of the perpetrator, the lapse of time between the crime and the subsequent identification, the accuracy of the prior descriptions, the witness' level of certainty at the pretrial identification, and the length of time between the crime and the identification. *Wethington v. State* (1990), Ind., 560 N.E.2d 496.

■ In the case at bar, each of the witnesses gave the police detailed descriptions of the person they saw soon after having seen the person, and these descriptions were consistent. These witnesses expressed their certainty that appellant was the person they had seen. They testified as to the distance between them and the person seen, weather conditions that day,

and the length of time they had to look at that person. The trial court properly denied appellant's motion to suppress the identification testimony.

■ In addition, appellant claims Howard Smith was shown the six photographic array after he had seen appellant's post-arrest photograph in the newspaper and also had viewed him on television. However, the record shows that Smith had given a description of appellant to police prior to appellant's arrest and the newspaper and television photographs. It was from Smith's personal observation of appellant that he based his in-court identification. It is apparent from Smith's testimony that the television and newspaper photographs had little or no influence on his identification of appellant.

Next, appellant argues that the trial court erred in denying his motion requesting funds to employ an eyewitness identification expert.

■ This Court has held that the decision to grant or deny funds to an indigent defendant for the purpose of employing an eyewitness identification expert is within the sound discretion of the trial court. *Hough v. State* (1990), Ind., 560 N.E.2d 511. Reversal of the trial court's ruling on this request is warranted only when there has been an abuse of discretion. *Id.* We have recently held that a trial court's denial of such a motion is not an abuse of discretion. *Hopkins v. State* (1991), Ind., 582 N.E.2d 345. In *Hopkins* the witness had chosen the defendant from a lineup after seeing the defendant on television. Reversal was not required however, because of the abundance of other evidence tending to identify the defendant as the perpetrator of the crime.

This case involves the testimony of several witnesses who stated that they saw appellant near the scene of the crime at the time in question. Other witnesses identified appellant as a person they saw near the location of the victim's vehicle after the murders. The number of witnesses and the consistency of their descriptions sug-

gests that the identification testimony is reliable.

Moreover, other evidence, as described above, links appellant to the crimes. Appellant's reliance on *People v. McDonald* (1984), 37 Cal.3d 351, 208 Cal.Rptr. 236, 690 P.2d 709, to support his position that refusal of the testimony of an identification expert was an abuse of discretion fails. The trial court did not abuse its discretion in denying appellant's request for funds.

Appellant argues that the trial court erred when it refused to grant appellant's request to cover a mural on the wall of the courtroom. Appellant argues that he was prejudiced because the mural related to the evidence in a way which was inflammatory to the jury.

Pursuant to a change of venue, appellant's trial was held in Shelby Circuit Court. In the courtroom there is a mural depicting the story of the judgment of Solomon, I Kings 4:16–28, whereby Solomon determines the true mother of an infant over which custody is disputed. Appellant filed a motion to have the mural covered during trial and argued in support thereof that the scene so depicted would cause the jury to convict appellant out of sympathy toward the victims, especially young children, rather than from their consideration of the evidence. The trial court denied appellant's motion to cover the mural, but instructed counsel, parties, and all witnesses to refrain from referring to the mural in any manner.

Appellant argues that the case of *Duffit v. State* (1988), Ind.App., 519 N.E.2d 216, supports his contention that the trial court's ruling was error and that appellant was prejudiced thereby. In *Duffit*, children's pictures and posters were hung on the courtroom walls in an effort to ease the apprehensions of the younger witnesses testifying in court. The defendant in that case, who was charged with multiple counts of child molestation and attempted child molestation, objected to the presence of the posters and drawings on the grounds that they denied his right to a fair trial.

In *Duffit*, the purpose for the presence of the courtroom decorations was to cause witnesses to feel at ease while giving their testimony. The Court of Appeals held that if there was any error in the process of decorating the courtroom walls, such error did not require a reversal because the defendant was not prejudiced. The decorations were not referred to by either the trial judge or the prosecution.

We granted transfer in the *Duffit* case, *Duffit v. State* (1988), Ind., 525 N.E.2d 607, and affirmed the opinion of the Court of Appeals. We held that reversal in that case was not warranted. However, we held that for purposes of future application, the practice of decorating the courtroom walls when done so in deference to certain witnesses is inappropriate as it may convey that the testimony of those witnesses is more credible or more important.

We note that a trial court has wide discretion in managing the conduct of a trial in such a manner which facilitates the ascertainment of truth, insures fairness, and obtains economy of time and effort commensurate with the rights of both society and the criminal defendant. *Vanway v. State* (1989), Ind., 541 N.E.2d 523. Exercise of the trial court's discretion will not be disturbed unless the defendant demonstrates that he was prejudiced by an abuse of that discretion. *Green v. State*, (1984), Ind., 461 N.E.2d 108.

The present case is distinguishable from the *Duffit* case. Here, the mural was not placed on the courtroom wall in reference to this case. The trial judge specifically ordered the parties, witnesses, and counsel, to refrain from making any reference to the mural. Appellant has not provided us with any information demonstrating how the mural was referred to in any way by the parties, counsel, witnesses, or the trial court, or how it had an impact on the verdict returned by the jury in some other way. In the absence of such a showing of prejudice, we see no abuse of discretion in the trial court's denial of appellant's request.

Before trial, appellant filed a motion to prohibit death qualification of the jury. This motion was denied by the trial court.

Appellant argues on appeal that this was error.

Appellant recognizes that this Court has held that the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment is whether the juror's views would prevent or substantially impair the performance of his or her duties as a juror in accordance with the instruction and oath. *Underwood v. State* (1989), 535 N.E.2d 507, *cert. denied,* 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 206, *reh'g denied,* 493 U.S. 985, 110 S.Ct. 524, 107 L.Ed.2d 524.

However, appellant cites art. 1, § 19 of the Indiana Constitution, which provides:

"In all criminal cases whatever, the jury shall have the right to determine the law and the facts."

Appellant contends that death qualification of the jury prevents the jury from making their own determination as to the law concerning capital punishment. Appellant argues that because of Indiana's unique constitutional provision, exclusion of jurors who do not meet the *Witherspoon* standard (*Witherspoon v. Illinois* (1963), 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, *reh'g denied,* 393 U.S. 898, 89 S.Ct. 67, 21 L.Ed.2d 186) is improper because it is discriminatory to the juror and the defendant.

Appellant argues that our decision in *Hoskins v. State* (1982), 441 N.E.2d 419, in which we rely upon the reasoning in *Adams v. Texas* (1980), 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581, is not dispositive of the issue because neither case involved a consideration of exclusion of jurors pursuant to *Witherspoon* where the jurors also serve as judges of the law as well as of the facts.

As pointed out by the State, in applying the standard mentioned above, jurors are excluded if their convictions about capital punishment prevent them from performing their duties. Death qualification is an examination of the juror's ability to follow the law once the juror determines it. Therefore, excusing a juror who states that his views regarding capital punishment are so strong that he will ignore the law after he makes his determination of the law is proper. Moreover, jurors who voice only a general objection to the death penalty may not be excused for cause from service on the jury. *See Adams, supra.* A recommendation regarding the death penalty reached by a jury selected by excluding those voicing only a general objection may not be carried out. *Hoskins, supra.* Therefore, death qualification does not interfere with a juror's task of determining the facts and the law since the exclusion is based upon the juror's inability to follow the law.

Appellant also claims that permitting the State to death qualify a jury results in a jury which is more prone to convict, thus denying him an impartial jury. This precise issue was presented in *Lockhart v. McCree* (1986), 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137. There the Eighth Circuit Court of Appeals had held that to death qualify a jury would result in a conviction prone jury. However, the Supreme Court of the United States reversed and held that the Constitution does not prohibit removal of prospective jurors who oppose the death penalty so strongly that it would have presented a substantial impairment of the performance of their duties for cause prior to the guilty phase of a defendant's bifurcated capital trial. We find no merit in appellant's contention that he was forced to accept a conviction prone jury.

We further note that appellant has not shown that he was prejudiced by the trial court's excusing of jurors because the jury did not reach a recommendation regarding the death penalty, and the death penalty was not imposed. The trial court did not err in denying appellant's motion to prohibit death qualification of the jury.

Next, appellant argues that the trial court erred when it denied his motion for judgment on the evidence as to the burglary count. Appellant argues that the State had failed to offer evidence on the element of breaking.

The crime of burglary is defined by Ind.Code § 35–43–2–1. We have held that the element of breaking may be

proved entirely by circumstantial evidence. *McCovens v. State* (1989), Ind., 539 N.E.2d 26. A breaking is proven by showing that even the slightest force was used to gain unauthorized entry. *Goolsby v. State* (1987), Ind., 517 N.E.2d 54. Opening an unlocked door, raising an unlocked window, or pushing a door which is slightly ajar constitutes a breaking. *Id.*

In the present case, the State presented testimony from Dexter Smith, husband and father of the victims, that the doors to his residence were always locked. Smith further testified that the doors to the house were locked when he left the house on the afternoon the murders were committed. Smith testified that his wife would not admit a stranger to the home. The State also presented testimony from Maggie Smith and Janeen Cook that the rear door of the Smith residence was unlocked when they arrived on the afternoon of the murders and discovered the victims' bodies on the floor of the bedroom. From this testimony one could infer that force was used to gain entry without the victim's permission. *See Jacobs v. State* (1983), Ind.App., 454 N.E.2d 894. Circumstantial evidence is sufficient if an inference may reasonably be drawn from that evidence which supports the verdict. *Mitchell v. State* (1990), Ind., 557 N.E.2d 660. The trial court did not err in denying appellant's motion for judgment on the evidence as to the burglary count.

Appellant's final argument is that the evidence was insufficient to support his convictions. The standard for review of sufficiency of the evidence is well settled. In addressing the issue of sufficiency of the evidence to sustain a conviction, the Supreme Court will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Taylor v. State* (1991), Ind., 578 N.E.2d 664. Circumstantial evidence alone may support a conviction. *Heck v. State* (1990), Ind., 552 N.E.2d 446.

The jurors could have concluded that the murders occurred sometime between 1:15 and 3:00 p.m. Witnesses testified that they saw appellant in the area of the Smith residence and sometime later near the victim's car. A ballistics expert testified that he believed, based upon tests conducted, that the gun found in the appellant's room was possibly the murder weapon. State's witness Hall testified that appellant had in effect admitted to him that he had committed the crimes. There is sufficient evidence in the record to support the conviction of appellant.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and KRAHULIK, JJ., concur.

DICKSON, J., concurs in result without separate opinion.