**Timothy W. STEPHENSON,**
**Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 40A05–0304–CR–185.**

Court of Appeals of Indiana.

Oct. 6, 2003.

Rehearing Denied Dec. 11, 2003.

John L. Tompkins, Brown Tompkins & Lory, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-defendant Timothy W. Stephenson appeals the denial of his motion to suppress. We reverse.

### Issue

Stephenson raises one issue, which we restate as whether the trial court erred in denying his motion to suppress.

### Facts and Procedural History [1]

On the evening of January 21, 2001, Slash Siegelin [2] visited the Jennings County Sheriff's Department and informed Deputy Jeffrey Jones that he had purchased methamphetamine from Stephenson in Stephenson's home. Siegelin took Major Steven Cardinal to Siegelin's brother's home, where he recovered a small amount of methamphetamine. Deputy Jones then swore out a search warrant affidavit for Stephenson's home. Based on this affidavit, Judge Jon W. Webster signed a search warrant at 9:17 p.m., which Deputy Jones returned at 9:45 p.m., having seized methamphetamine and chemicals and implements for its manufacture. Appellant's App., State's Exhibit 1.[3]

The State charged Stephenson with two counts of Class B felony dealing in a schedule II controlled substance,[4] one count of Class D felony possession of a schedule II controlled substance,[5] one count of Class D felony neglect of a dependent,[6] and one count of Class A misdemeanor possession of marijuana.[7] The trial court denied Stephenson's motion to suppress evidence seized pursuant to the search warrant. On October 18, 2002, the trial court found Stephenson not guilty of marijuana possession and guilty as charged on all other counts. The trial court subsequently vacated Stephenson's conviction for possession of a schedule II controlled substance. Stephenson now appeals.

### Discussion and Decision

 Stephenson contends that the search warrant affidavit is invalid and that the trial court therefore should have granted his motion to suppress. "A court may issue warrants only upon probable cause, supported by oath or affirmation[.]" Ind. Code § 35-33-5-1; see also U.S. Const. amend. IV; Ind. Const. art. I, § 11. "An affidavit demonstrates probable cause to

1. We heard oral argument in this case on September 4, 2003, at Indiana University School of Law–Indianapolis. We extend our appreciation to the law school's students, faculty, and staff for their interest and hospitality and to counsel for their written and oral presentations.

2. Siegelin's given name is somewhat of a mystery. Stephenson refers to Siegelin as Larry, whereas the State refers to him as David. At trial, Siegelin referred to himself as "Slash." Tr. at 66.

3. We direct Stephenson to Indiana Appellate Rule 50(C), which provides that "[a] table of contents shall be prepared for every Appendix[,]" and to Appellate Rule 51(C), which provides that "[a]ll pages of the Appendix shall be numbered at the bottom consecutively[.]"

4. Ind.Code § 35-48-4-2.

5. Ind.Code § 35-48-4-7.

6. Ind.Code § 35-46-1-4.

7. Ind.Code § 35-48-4-11.

search premises if it provides a sufficient basis of fact to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime." *Utley v. State*, 589 N.E.2d 232, 236 (Ind.1992), *cert. denied* (1993). "The decision to issue the warrant should be based on the facts stated in the affidavit and the rational and reasonable inferences drawn therefrom." *Id.*

In deciding whether to issue a search warrant, the task of the issuing magistrate is to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Query v. State*, 745 N.E.2d 769, 771 (Ind.2001) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The reviewing court is required to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Id.* (quoting *Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317). A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Id.* "A 'reviewing court' for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision." *Id.* In our review, we consider only the evidence presented to the issuing magistrate and may not consider post hoc justifications for the search. *Id.*

*Hensley v. State*, 778 N.E.2d 484, 487 (Ind. Ct.App.2002) (some citations omitted).

"[O]nce the State has obtained a magistrate's determination of probable cause, a presumption of validity obtains." *Watt v. State*, 412 N.E.2d 90, 95 (Ind.Ct. App.1980). "Where a presumption of the validity of the search warrant exists, the burden is upon the defendant to overturn that presumption. If the evidence is conflicting, we consider only the evidence favorable to the ruling and will affirm if the ruling is supported by substantial evidence of probative value." *Jones v. State*, 783 N.E.2d 1132, 1136 (Ind.2003) (citation omitted).

When seeking a search warrant, the police must follow Indiana Code Section 35–33–5–2, which specifies the minimum information necessary to establish probable cause. *Jaggers v. State*, 687 N.E.2d 180, 183 (Ind.1997). This statute reads in relevant part as follows:

(a) Except as provided in section 8 of this chapter,[8] no warrant for search or arrest shall be issued until there is filed with the judge an affidavit:

(1) particularly describing:

(A) the house or place to be searched and the things to be searched for; or

(B) particularly describing the person to be arrested;

(2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:

(A) the things as are to be searched for are there concealed; or

(B) the person to be arrested committed the offense; and

(3) setting forth the facts then in knowledge of the affiant or information based on hearsay, constituting the probable cause.

---

**8.** Indiana Code Section 35–33–5–8 governs the issuance of a warrant without an affidavit upon the receipt of "sworn testimony of the same facts required for an affidavit[.]"

(b) When based on hearsay, the affidavit must either:

(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

Ind.Code § 35–33–5–2.

 "Because the request for a warrant is necessarily made *ex parte*, the most basic notions of due process require that [an attack of a search warrant affidavit] be permitted." *Watt*, 412 N.E.2d at 95 (citing *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). If a defendant establishes by a preponderance of the evidence that "a false statement knowingly and intentionally, or with a reckless disregard for the truth, was included by the affiant in the warrant affidavit, .... and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674.

 The search warrant affidavit sworn out by Deputy Jones reads in relevant part as follows:

Deputy Jeffrey Jones of the Jennings Co. Sheriff [sic] Department swears that he believes and has probable cause to believe that certain property, hereinafter described, is or will be concealed in or upon the following described residence, to-wit: white ranch house with garage located at 1305 W. Ben Drive (Burnt Pine Addition), Jennings County, Indiana.

The property consists of the following: methamphetamine; chemicals for manufacturing methamphetamine; implements for manufactor [sic] meth, cash, records sales [sic] of other transactions which constitutes [sic] unlawfully obtained property/contraband/property used or possessed with the intent to use in the concealment of an offense/evidence of an offense.

In support of your affiant's assertion of probable cause, the following facts are within your affiant's personal knowledge, to-wit: within last 36 hours, Larry Siegelin purchased methamphetamine from Tim Stevenson [sic] and was inside the residence described above when he observed methamphetamine and implements for manufacturing meth. Larry turned the methamphetamine over to the Jennings Co. Sheriff's Department. The substance tested positive for methamphetamine.

Therefore, your affiant respectfully requests the Court to issue a search warrant directing the search for and seizure of the above-described property.

I swear and affirm, under the penalties of perjury as specified by IC 35–44–2–1, that the foregoing representations are true.

Dated: 1/21/01

Appellant's App., State's Exhibit 1.

Stephenson contends that the search warrant affidavit is invalid because it contains several false or misleading statements, including Deputy Jones's affirmation that the facts stated in the affidavit were within his personal knowledge. At the suppression hearing, Deputy Jones testified in relevant part as follows:

Q Okay. Now turning your attention to that affidavit. Does it state anywhere on that affidavit that the

small bag of white powdery substance was recovered from a third person and not from the informant?

A No it was recovered from him.

Q Who?

A Mr. Siegelin.

Q Well you weren't there when it was recovered were you?

A No I was not.

Q And it was recovered from his brother's house, right?

A Yes it was.

Q And nowhere in the affidavit does it say that the small bag of white powder was recovered from the brother's house and not from the person of Larry Siegelin?

A I wasn't there when he went into the residence with Major Cardinal, so I can't testify to that aspect of it.

Q Now again turning just towards what's stated on that affidavit in front of you, it doesn't say anywhere that Mr. Siegelin first said that he went to confront Mr. Stephenson and then later changed to an attempt to purchase methamphetamine, does it?

A No it does not.

Q Okay, it doesn't state anywhere in that affidavit that Mr. Siegelin admitted that he had a grudge and was angry with Mr. Stephenson does it?

A No it does not.

Q And that affidavit does that, it starts out in the form, the affiant has personal knowledge, do you see where it says that? Right below where you start filling in with the handwritten?

THE COURT: It's the third paragraph.

A Yes.

Q Now you're the affiant whose signature appears above the affiant's line, right?

A Yes.

Q You did not actually see Mr. Siegelin purchase anything from Mr. Stephenson within thirty-six hours of filling out that form, did you?

A No I did not see the buy or the purchase.

Q Okay, and you weren't with him at any point when he was inside the residence at 1305 West Bend, were you?

A No, I was not.

Q Okay, actually the facts that are in that affidavit are not based on your personal knowledge, but rather on what Mr. Siegelin told you right?

A Information that was relayed to me.

Q By Mr. Siegelin?

A Correct.

Tr. at 6–8.

■ The affidavit suggests that Deputy Jones personally witnessed Siegelin purchase methamphetamine from Stephenson inside Stephenson's home and that Siegelin surrendered the methamphetamine to the authorities without further ado.[9] In light of Deputy Jones's testimony, it is obvious that none of this was true. There is no indication that Deputy Jones knowingly and intentionally made false statements, but his testimony clearly evidences a reckless disregard for the truth

---

**9.** The affidavit leaves one to speculate whether Siegelin relinquished the methamphetamine as a willing participant in a controlled buy, as a suspect caught red-handed at the scene of the crime, or as a "concerned citizen." We must reject the State's contention that the affidavit contains a statement against penal interest that establishes Siegelin's credibility; on its face, the affidavit purports to be based on Deputy Jones's personal knowledge, not on hearsay statements made by Siegelin.

of the facts stated in the affidavit.[10] As such, the trial court erred in denying Stephenson's motion to suppress.

Reversed.

SHARPNACK, J., concurs.

BAKER, J., concurs in result with opinion.

BAKER, Judge, concurring in result.

I fully concur in the majority's decision to reverse the trial court's denial of Stephenson's motion to suppress. However, I do so for a different reason. Specifically, I would reverse for the reason that Detective Jones's affidavit is flawed because Siegelin's credibility was not established.

Initially, I acknowledge that Detective Jones's probable cause affidavit may be read as making an assertion that is untrue. The affidavit states that Detective Jones had "personal knowledge" of Siegelin purchasing methamphetamine from Stephenson. State's Ex. 1. If the majority interprets this to mean that Detective Jones witnessed the Siegelin purchase, then its decision is undoubtedly correct.

However, if one construes Detective Jones's affidavit as relating what Siegelin *told him* about the purchase in order to establish Siegelin's credibility—a reasonable interpretation, given the State's argument about a statement against penal interests being inherently credible—then one need not decide whether Detective Jones made false statements. The only decision that need be made is whether Siegelin's credibility was established. In

its appellate brief, the State argues that Siegelin's information indicated veracity because he admitted to obtaining methamphetamine from Stephenson's home. Appellee's Br. p. 6. The State argued that such "declarations against penal interest can furnish a sufficient basis for establishing the credibility of an informant." Appellee's Br. p. 6. Our supreme court stated as much in *Houser v. State*, 678 N.E.2d 95, 100 (Ind.1997).

At the suppression hearing, however, it was established that even though Siegelin stated that he had purchased methamphetamine from Stephenson, Siegelin was not in possession of methamphetamine when he approached the Jennings County Sheriff Department. Instead, Siegelin took Deputy Cardinal to Stephenson's home, where a small amount of methamphetamine was recovered. In my view, taking a police officer to a methamphetamine laboratory in which one does not have a possessory interest is not against one's penal interest. Therefore, the State failed to show that the informant's credibility was established, and so the warrant could not have been based on probable cause.

At oral argument, the State went on to intimate that *whenever* a person contacts police regarding criminal activity, that person is inherently making a statement against his penal interests because he subjects himself to a charge of false reporting. The State's reasoning is that such an action—because of the threat of a false reporting charge—automatically corroborates the hearsay contained in an affidavit. The State's position is contrary to Indiana

---

10. Consequently, the good faith exception to the exclusionary rule is inapplicable. *See United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ("Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."); *see also Newby v. State*, 701 N.E.2d 593, 603 (Ind.Ct.App.1998) (concluding that good faith exception was inapplicable where "the same officers that provided and presented the misleading information in the affidavit actively participated in the subsequent search of Newby's residence").

Code section 35–33–5–2(b)(2), however, which requires that an affidavit based on hearsay must "contain information that establishes that the totality of the circumstances corroborates the hearsay." Under the totality of the circumstances, a person's statement against penal interest *may* be sufficient. *Newby v. State*, 701 N.E.2d 593, 600 (Ind.Ct.App.1998). The magistrate issuing a warrant is to decide if under the totality of the circumstances a warrant shall issue. *Id.* A statement against penal interest is not the "automatic corroboration" as the state contends, though it is apparent to me that statements against one's penal interest might very well influence a magistrate's decision.

Inasmuch as my colleagues and I read the affidavit differently, we come to the same conclusion by a different road.