Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 19 2013, 7:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN ANDREW GOODRIDGE**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CHRISTOPHER A. FISCHER,                )
                                       )
    Appellant-Defendant,           )
                                       )
      vs.                       )    No. 82A04-1207-CR-382
                                       )
STATE OF INDIANA,                      )
                                       )
    Appellee-Plaintiff.            )

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Kelly Fink, Magistrate
Cause No. 82C01-1112-FC-1520

**June 19, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Christopher Fischer ("Fischer") appeals his jury convictions for C felony burglary, D felony receiving stolen property, and D felony theft in Vanderburgh Circuit Court on the grounds that inadmissible evidence obtained pursuant to an unlawful Terry stop and an invalid search warrant was admitted at trial. Fischer argues the admission of this evidence at trial violated his Fourth Amendment protection against unlawful searches and seizures under the U.S. Constitution. We disagree and affirm.

**Facts and Procedural History**

Shortly before December 9, 2011, Sarah Wadlington ("Wadlington") came to the Vanderburgh Sheriff's Department, where she informed Detective Randy Chapman ("Detective Chapman") that Fischer, her former boyfriend, had obtained stolen goods. Wadlington described Fischer's truck and told the detective that Fischer would be bringing stolen goods to a storage unit located on Mill Road at some point on December 9, 2011. Based on this information, police began watching for Fischer's truck as well as conducting surveillance in the area near the storage facility.

On December 9, 2011, detectives of the Vanderburgh County Sheriff's Department were independently conducting surveillance near St. Joe Avenue and Allens Lane in Vanderburgh County due to recent copper thefts from area businesses. At around 1:30 AM, Detectives Mike Robinson and Chapman drove around the rear of the Frontier Kemper Building and saw Fischer's Ford F-150 pickup truck parked with an empty trailer attached. Id. Although it was cold outside, in contrast to other nearby vehicles, the truck's windows were not frosted over, indicating that the truck had been in recent use.

2

The detectives began surveillance of the truck and also observed a white Chrysler 300M circling the area. Shortly thereafter, the detectives saw the truck emerging from behind the building with a Kawasaki utility vehicle loaded onto the previously empty trailer. The 300M and the truck left the area together, heading east on Allens Lane, and the police followed. The vehicles drove to Mill Road Mini Storage, where detectives already stationed at that facility were able to observe Fischer exiting the truck and opening storage unit 52.

As Fischer opened the unit, detectives converged on the suspects and detained Fischer, along with the occupants of the white Chrysler 300M, David Brand, Tasha Fischer, and Ashley White. The officers observed several items in plain view in the open storage unit and in Fischer's truck related to an open theft and a burglary investigation in Evansville. Specifically, the detectives observed tools, chainsaws, drills, jumper cables, and grinders related to that open investigation and a length of high voltage cable that had previously been reported stolen by Frontier Kemper. Also, Detective Kenny Fields recognized other items in plain view that had been reported stolen by Ritzert Plumbing. An inventory search was also conducted on Fischer's truck before the vehicle was towed pursuant to Fischer's arrest, and during that search numerous items were photographed and placed back in the truck.

After taking statements from the occupants of the white car, the police contacted the listed renter to obtain consent to search the open unit, number 52, and a second unit used by Fischer.[1] Detective Andrew Lasher obtained a search warrant to conduct a full

[1] Fischer's sister, Amanda, was the lessee of the units. Police requested and received her consent to search the unit. Tr. p. 497.

3

search of Fischer's truck. Upon executing the warrant on December 9, 2011, police seized tools, chainsaws, cell phones, gloves, wire, disc grinders, drills, cordless batteries, extension cords, a hanging light, jumper cables, and flashlights as "fruits, instrumentalities and evidence of the crime of Burglary and Theft." Appellant's App. p. 173.

On December 13, 2011, Fischer was charged with three counts: (1) Class C Felony Burglary; (2) Class D Felony Theft; and (3) Class D Felony Receiving Stolen Property. The State also alleged that Fischer was an habitual offender.

On April 23, 2012, Fischer filed a motion to suppress evidence discovered pursuant to the search warrant, claiming that the initial detention of persons and property at the mini storage facility was an unlawful Terry stop and that the subsequent warrant lacked probable cause because police had also obtained information from a confidential informant whom they failed to mention in the affidavit of probable cause. A suppression hearing was held on May 7, 2012. The court denied the motion on May 10, 2012.

On May 16, 2012, the jury trial commenced, and the photographs of the stolen tools observed in the preliminary search and in the searches pursuant to the consent of Fischer's sister and pursuant to the warrant were admitted at trial without an initial objection by Fischer. Tr. pp. 93, 207, 219, 220, 221, 241, 243, 244, 245, 246, 259, 264. However, Fischer did object to testimony connecting the items in the photographs to Fischer's storage unit and truck as products of illegal searches executed under an unlawful stop and an invalid warrant, but the testimony was admitted over Fischer's continuing objection. Tr. pp. 300-26.

On May 17, 2012, the jury returned verdicts of guilty on all three counts, and also found Fischer to be an habitual offender. Fischer was sentenced to six years executed in the Department of Correction for Class C felony burglary, and the trial court ordered him to serve an additional eight years for the habitual offender adjudication, for a total of fourteen years executed. Fischer was also ordered to serve concurrent terms of two years executed for Class D felony theft, and two years executed for Class D felony receiving stolen property. Fischer now appeals.

## Standard of Review

The admission of evidence is reviewed only for an abuse of discretion, and the trial court's exercise of its discretion in this regard is abused only if the trial court's decision is clearly against logic and the effect of the facts and circumstances before the court, or if the court has misinterpreted the law. Rogers v. State, 897 N.E.2d 955, 959 (Ind. Ct. App. 2008), trans. denied. In reviewing the trial court's decision, we do not reweigh evidence, and, while we consider conflicting evidence most favorable to the trial courts ruling, uncontested evidence that is favorable to the defendant is also considered. Collins v. State, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), trans. denied.

## Discussion and Decision

Fischer contends that the trial court abused its discretion in denying his motion to suppress the evidence obtained from the truck and the storage units. However, this is not an interlocutory appeal; rather, Fischer appeals following his conviction. Therefore, the question is properly framed as whether the trial court abused its discretion in admitting

the evidence obtained from the truck and the storage units.[2] Patterson v. State, 958 N.E.2d 478, 482 (Ind. Ct. App. 2011).

The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures performed by the government.[3] Malone v. State, 882 N.E. 2d 784, 786 (Ind. Ct. App. 2008). Classically, this protection is enforced by the requirement that police officers obtain a warrant before searching premises owned by an individual or seizing an individual's property, and searches conducted without a warrant are considered unreasonable *per se*. Holder v. State, 847 N.E.2d 930, 935 (Ind. 2006). However, there are a few established exceptions to the warrant requirement, and the State may, under appropriate circumstances, defend against a charge that it executed an unreasonable search, if it can prove that an exception to the warrant requirement existed at the time of the search. Id.; Malone, 882 N.E.2d at 786.

First, Fischer claims that his initial detention was without reasonable suspicion and was therefore unjustified under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Terry permits officers to stop and briefly detain an individual for investigative purposes if the officer has a reasonable suspicion that criminal activity may be underway, so long as the officer can support that suspicion by articulable facts. Terry, 392 U.S. at

---

[2] The State alleges that the argument regarding admission of evidence is waived because Fischer failed to object to the introduction of photographs at trial. However, the State introduced the photographs into evidence through the individuals who had claimed the items photographed were stolen, before the photographs were linked to Fischer's theft of the items. Fischer did object to the investigating detectives' testimony regarding where the previously admitted photographs had been taken and linking the photographs to Fischer's thefts. Accordingly, Fischer has preserved, if only partially, his claim that the evidence was erroneously admitted, and we review the trial court's decision to admit the evidence notwithstanding any waiver of the issue, partial or otherwise.

[3] Fischer raises no claim under the Indiana Constitution, and therefore waives any state constitutional claim. Patterson, 958 N.E.2d at 488.

21; Armfield v. State, 918 N.E.2d 316, 319 (Ind. 2009); Patterson, 958 N.E.2d at 482 (Ind. Ct. App. 2011); Howard v. State, 862 N.E.2d 1208, 1210 (Ind. Ct App. 2007). Importantly, the officer need not establish probable cause in order to conduct a Terry stop. Id.

Fischer claims that the officers in this case lacked reasonable suspicion to detain him and conduct an investigative search of his truck and open storage unit. This Court determines whether an officer had the requisite reasonable suspicion to conduct an investigative stop by examining the totality of the circumstances. Fischer is correct that reasonable suspicion is an objective determination and that it "must be based upon specific and articulable facts, not mere hunches." Swanson v. State, 730 N.E.2d 205, 209 (Ind. Ct. App. 2000) (citing Kenner v. State, 703 N.E.2d 1122, 1125-25 (Ind. Ct. App. 1999)). However, "[r]easonable suspicion will be found where the facts known to the officer and the reasonable inferences would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." Swanson, 703 N.E.2d at 209 (citing Baldwin v. Reagan, 715 N.E.2d 332, 337 (Ind. 1999)).

Cases involving Terry stops are very fact-sensitive and vary in the type and number of articulable facts leading to reasonable suspicion to conduct a stop. In a marijuana possession case, the smell of burnt marijuana emanating from the open door of a vehicle, coupled with the concern that the suspect might be armed was sufficient to support reasonable suspicion for a stop. Patterson, 958 N.E.2d at 483-84. In a public intoxication case, the smell of alcohol and observed, slurred speech was sufficient to justify a stop. Woodson v. State, 966 N.E.2d 135, 141 (Ind. Ct. App. 2012). And in

Terry's case, the officer's reasonable suspicion was supported simply by their observation of conduct that appeared consistent with a hypothesis that the suspects were contemplating a daylight robbery. Terry, 392 U.S. at 4.

In this case, officers were conducting general surveillance in the early morning hours in an area that had experienced a rash of copper thefts. Frontier Kemper was one area business that stored copper and other materials on its premises and had experienced copper thefts in the recent past. At the time in question, the business was closed for the evening, and the officers noted that no other vehicles were in use in the area. Additionally, police had received information form Sarah Wadlington that Fischer was dealing in stolen goods and that he would be engaging in such activity at a mini storage facility on Mill Road that evening. Thus, they were conducting surveillance both regarding recent thefts by unknown suspects and also pursuant to Wadlington's information about Fischer.

At 1:30 a.m., the detectives observed a truck matching the description provided by Wadlington parked behind the Frontier Kemper building. An unloaded trailer was hitched to the truck, and the truck appeared to have been in recent use due to the lack of frost on its windows. As the detectives began surveilling the truck, they also saw a white Chrysler 300M circling the area. When the detectives saw the truck and 300M leave the parking lot at approximately 2 a.m., or shortly thereafter, now with the Kawasaki utility vehicle loaded on the truck's trailer, they followed the vehicles to the mini storage facility on Mill Road, and to the specific unit they had been tipped about by Ms. Wadlington. When the police converged on Fischer and the occupants of the 300M, they

were able to observe items that had been reported stolen in plain view from the open door of unit 52.

Although "an anonymous tip alone is not likely to constitute the reasonable suspicion necessary for a valid Terry stop," Sellmer v. State, 842 N.E.2d 358, 361 (Ind. 2006), here, police had more. First, police had information from Sarah Wadlington, Fischer's ex-girlfriend, that Fischer would be engaged in illegal activity at the storage unit. Police conducting an independent investigation also observed Fischer's truck engaged in suspicious activity, very early in the morning, in an area that had been experiencing a rash of thefts. For all these reasons, officers had reasonable suspicion to conduct the Terry stop.

Relying on the information gathered from Wadlington[4] as well as information obtained during the Terry stop, Detective Andrew Lasher then obtained a search warrant for Fischer's truck. Fischer also challenges the legality of the warrant, arguing only that, "[t]he warrant is impermissibly tainted by the illegality of the . . . initial seizure of [Fischer's] person and property." Appellant's Br. at 13.

With respect to determining whether a warrant is valid, this Court asks whether the issuing judge had a substantial basis for concluding that probable cause existed. Stephenson v. State, 796 N.E.2d 811, 814 (Ind. Ct. App. 2003) (citing Query v. State, 745 N.E.2d 769, 771 (Ind. 2001). The issuing judge's task is to make a practical decision whether there is a fair probability that evidence of a crime will be found in a particular

---

[4] At trial, Fischer argued that because police had relied on Wadlington's information in making the Terry stop, but failed to note the information in the probable cause affidavit, that the warrant was invalid. He does not raise this same argument on appeal, and with the other, independent, Terry stop evidence contained in the probable cause affidavit, this argument would likely be unpersuasive in any event.

place, given all the circumstances set forth in the affidavit. Mehring v. State, 884 N.E.2d 371, 376-77 (Ind. Ct. App. 2008). A substantial basis for such a decision exists where reasonable inferences drawn from the totality of the evidence support the determination of probable cause. Stephenson, 796 N.E.2d at 814. This court may only consider the evidence presented to the issuing judge, and may not consider any additional or post hoc justifications for issuing the warrant. Id.

In this case, police had conducted surveillance on Fischer's truck after a confidential informant informed them of Fischer's alleged illegal activity. They were also conducting general surveillance for the rash of thefts in the area. Thus, in the very early morning hours in question, there were officers operating under both targeted and independent investigations. After both investigations culminated in the apprehension of Fischer as he opened the storage unit, the officers sought to obtain a warrant, and in the affidavit for probable cause submitted to the issuing judge, detailed the events of the morning and the information obtained through their investigations. The affidavit contained reliable and uncontroverted evidence in the form of stolen goods observed by police in plain view during the Terry stop to support the warrant.

Because the information gathered during the Terry stop, as well as the information volunteered by Fischer's ex-girlfriend, Wadlington, provided a substantial basis to establish a reasonable probability that evidence of a crime would be found in Fischer's truck, the trial court did not abuse its discretion in finding that there was sufficient probable cause to issue a warrant. For all of these reasons, we conclude the search and seizure of Fischer's truck and storage units did not violate his Fourth Amendment rights

10

under the United States Constitution, and the trial court did not abuse its discretion in admitting the challenged evidence.

Affirmed.

BAKER, J., and MAY, J., concur.