## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 07 2019, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy P. Broden
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robin W. Walker, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 7, 2019 <br><br> Court of Appeals Case No. 18A-CR-1909 <br><br> Appeal from the Tippecanoe Circuit Court <br><br> The Honorable Steven P. Meyer, Judge <br><br> The Honorable Thomas H. Busch, Senior Judge <br><br> Trial Court Cause No. 79D02-1708-F5-107 |

**Friedlander, Senior Judge.**

[1] Following a two-phase trial, Robin Walker was convicted of operating a vehicle while intoxicated with prior conviction, a Level 6 felony,[1] and was adjudicated a habitual vehicular substance offender.[2] The sole issue he raises for our review is whether the trial court erred in admitting into evidence toxicology results for blood drawn at the time of his arrest. We affirm.

[2] The facts most favorable to the judgment reveal that on August 11, 2017, around 11:30 p.m., Lafayette Police Officer David Chapman was parked in a convenience store parking lot and observed a person on a three-wheeled moped heading south on 14th Street. The driver of the moped, later determined to be Walker, disregarded a red traffic light and turned right at the intersection, without stopping and without using his indicator. Officer Chapman followed Walker and saw Walker drive his moped onto a sidewalk and proceed down the sidewalk for about half a block before returning to the road. Once back on the road, Walker weaved in and out of traffic without signaling and cut off several cars, causing the cars to suddenly brake. Officer Chapman initiated a traffic stop, and Walker pulled the moped to the side of the road.

[3] Officer Chapman approached Walker and smelled the odor of an alcoholic beverage on his breath. He noticed that Walker had poor balance. Officer Chapman administered the horizontal gaze nystagmus test, which Walker

---

[1] Ind. Code § 9-30-5-1(c) (2001); I.C. § 9-30-5-3(a)(1) (2014).

[2] Ind. Code § 9-30-15.5-2 (2015).

failed. Officer Chapman then asked if Walker would perform additional field sobriety tests. Walker agreed. Walker failed both the one leg stand test and the walk and turn test.

[4] Officer Chapman submitted a probable cause affidavit and obtained a search warrant for samples of Walker's blood and urine. Test results of the samples revealed the presence of marijuana and indicated that Walker's blood alcohol content was .056.

[5] On August 16, 2017, the State charged Walker with Count I, Level 5 felony operating a vehicle after forfeiture of license for life; Count II, Level 6 felony operating a vehicle while intoxicated with prior conviction; Count III, Class A misdemeanor operating a vehicle while intoxicated endangering a person; Count IV, Class C misdemeanor operating a vehicle with a Schedule I or II controlled substance or its metabolite in the body; and also alleged that Walker was a habitual vehicular substance offender.

[6] Before trial, Walker filed a motion to suppress the toxicology results, and, on May 3, 2018, the trial court held a hearing on the matter. During the hearing, Officer Chapman's probable cause affidavit for the search warrant was offered into evidence. Officer Chapman testified and acknowledged that there was an inaccuracy in the affidavit. Specifically, he had incorrectly marked a box on the affidavit indicating that alcoholic beverage containers were in view at the time Walker was arrested.

[7]     At the conclusion of the hearing, the trial court denied Walker's motion to suppress, finding as follows:

> It appears that it was a clerical error and [Officer Chapman] made a mistake, [sic] it was an honest mistake but it wasn't done willfully or intentionally. . . . So, all in all, uh, I think that uh – that based upon this officer's testimony that [the officer] did provide sufficient observations [of Walker's behavior]. In addition to that the flunking – the failure of the three (3) field tests. So, I – even if you didn't have – even if you didn't have some of these observations, I think that not passing the field tests and the driving behavior in and of itself probably would support the probable cause affidavit for the blood draw, but we had these other observations made by the officer and so uh, it appears that enough sufficient evidence was given . . . that was reliable to support the signing and the granting of the search warrant for the blood and urine test.

Tr. Vol. 2, pp. 34, 36. When the toxicology results were offered at trial, Walker objected. The trial court overruled his objection and admitted the results into evidence.

[8]     In a bifurcated proceeding, Walker first was tried by jury on July 12 and 13, 2018.[3] At the conclusion of the trial, Walker was found guilty of Class C misdemeanor operating a vehicle while intoxicated, Class A misdemeanor

---

[3] Prior to trial, Count I, Level 5 felony operating a vehicle after forfeiture of license for life, was dismissed by the State, and the remaining counts were renumbered. The record indicates that Walker was tried on two counts in phase one of his trial: Count I, operating a vehicle while intoxicated endangering a person; and Count II, operating a vehicle with a Schedule I or II controlled substance or its metabolite in the body. When the trial court gave its final instructions, the jury was instructed that it could also find Walker guilty of the lesser included offense of operating a vehicle while intoxicated as a Class C misdemeanor. *See* Tr. Vol. 3, pp. 17-18.

operating a vehicle while intoxicated endangering a person, and Class C misdemeanor operating a vehicle with a Schedule I or II controlled substance or its metabolite in the body. The trial court entered judgment on two of the counts: operating a vehicle while intoxicated endangering a person and operating a vehicle with a Schedule I or II controlled substance or its metabolite in the body.

[9] The second phase of the trial began immediately following the conclusion of phase one – to resolve the Level 6 felony charge of operating a vehicle while intoxicated with prior conviction and to determine Walker's habitual offender status. Walker waived his right to a jury trial, and the trial court found him guilty of the Level 6 felony and also found him to be a habitual vehicular substance offender.

[10] On July 27, 2018, the trial court sentenced Walker to four years with sixty days ordered served in the Tippecanoe County Jail and the remainder of the sentence suspended to probation. Walker now appeals.

[11] The issue is whether the court abused its discretion in admitting into evidence the results of Walker's toxicology test of the blood sample that was drawn at the time of his arrest. Generally, we review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Joyner v. State*, 678 N.E.2d 386 (Ind. 1997). We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id*.

[12] Walker challenges the probable cause affidavit that supported the issuance of the search warrant for the blood draw. The Fourth Amendment to the United States Constitution and article I, section 11 of the Indiana Constitution both require probable cause for the issuance of a search warrant. *See Query v. State*, 745 N.E.2d 769 (Ind. 2001). The task of the trial court when deciding whether to issue a search warrant is "simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 771 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983)). On appeal, this Court's duty is to determine whether the issuing court had a "substantial basis" for concluding that probable cause existed. *Id*. We examine whether "reasonable inferences drawn from the totality of the evidence support the determination of probable cause." *Id*. "[T]he amount of evidence needed to supply probable cause of operating while intoxicated is minimal[.]" *Hannoy v. State*, 789 N.E.2d 977, 989 (Ind. Ct. App. 2003), *trans. denied*.

[13] The request for a search warrant is necessarily made ex parte. *Stephenson v. State*, 796 N.E.2d 811 (Ind. Ct. App. 2003), *trans. denied*. Thus, to preserve the basic notions of due process, a defendant can defeat the validity of a search warrant if he can establish by a preponderance of the evidence that "a false statement knowingly and intentionally, or with a reckless disregard for the truth, was included by the affiant in the warrant affidavit, . . . and, . . . the affidavit's remaining content is insufficient to establish probable cause" for the

search.  *Id.* at 815 (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 2776, 57 L. Ed. 2d 667 (1978)).  If the defendant meets this burden, the search warrant must be voided, and the fruits of the search must be excluded to the same extent as if the probable cause was lacking on the face of the affidavit.  *Id.*  Mistakes and inaccuracies in a search warrant affidavit will not defeat the reliability of the affidavit so long as such mistakes were innocently made.  *Utley v. State*, 589 N.E.2d 232 (Ind. 1992).

[14] Walker argues that the probable cause affidavit contained false statements, specifically:  "alcoholic beverage containers in view," "Walker's eyes were watery and bloodshot," and "his balance was poor."  Appellant's Br. p. 6.  He maintains that the affidavit submitted by Officer Chapman was done so with knowing, intentional, or reckless disregard for the truth.  Walker contends that, "excising these inaccuracies, the affidavit d[oes] not support a finding of probable cause for issuance of a warrant for the blood draw."  *Id.*  We disagree.

[15] There is no dispute that Officer Chapman erred when he indicated in the affidavit that alcoholic beverage containers were in view when Walker was arrested.  We, however, can find no indication in the record that this single piece of misinformation in the affidavit was made with reckless disregard for the truth or that the mistake was anything more than innocently made.

[16] As for the officer's other observations, Walker argues that the footage from Officer Chapman's body camera contradicted them.  To the contrary, the footage indicates that Walker exhibited poor balance.  Walker swayed while the

officer administered field sobriety tests, and he needed to brace himself against a retaining wall. While the body camera footage did not confirm the officer's observations that Walker's eyes were watery, glassy, and bloodshot, the officer testified under oath to these observations.

[17] Furthermore, additional evidence supported a finding of probable cause to issue the search warrant. The officer testified that he observed Walker proceed through a red traffic signal, fail to use his turn signal, drive onto a sidewalk, and drive erratically through traffic. Also, Walker failed to follow the officer's instructions when the horizontal gaze nystagmus test was administered, and Walker failed two additional field sobriety tests.

[18] Based upon the foregoing, we find that the trial court had a substantial basis for concluding that probable cause existed to issue the search warrant. The court did not abuse its discretion when it admitted into evidence Walker's toxicology results from the blood draw.

[19] Judgment affirmed.

Crone, J., and Bradford, J., concur.