FILED

May 02 2018, 7:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

James H. Voyles, Jr.
Tyler D. Helmond
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Darring,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | May 2, 2018<br><br>Court of Appeals Case No.<br>49A02-1706-CR-1426<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Shatrese M. Flowers, Judge<br><br>The Honorable Peggy Ryan Hart, Magistrate<br><br>Trial Court Cause No.<br>49G20-1408-F3-41089 |

**Altice, Judge.**

## Case Summary

Christopher Darring brings this interlocutory appeal of the trial court's denial of his motion to suppress evidence obtained as the result of a search of his home. Specifically, he contends that the probable cause affidavit used to secure the search warrant contained false information and material omissions in reckless disregard for the truth.

We affirm.

## Facts & Procedural History

After 2:00 in the morning on August 22, 2014, Officer Dwayne May of the Indianapolis Metropolitan Police Department (IMPD) was dispatched to 3132 W. 61st Street. He was responding to Darring's 911 call indicating that another man – later identified as Jason Holland, his next-door neighbor – was drunk and trying to start an altercation with Darring. Officer May spoke with both men briefly and learned that the argument was about money. Before leaving, he instructed them to stop acting like children, work it out, and sober up.

Around the same time the next morning, Holland called 911 to report that Darring had shot him.[1] Officer May was again dispatched to the scene. He

---

[1] Darring had, in fact, shot at the ground near Holland's feet and the bullet ricocheted and hit Holland in the leg, causing a grazing injury.

parked along the road between the two properties and immediately smelled the odor of burnt marijuana after getting out of his vehicle. Officer May first spoke with Holland, who was intoxicated and had an injury to his leg. Officer May did not smell marijuana on Holland's person.

[5] After speaking with Holland, Officer May walked up the driveway toward Darring's house. Darring came out the front door and met Officer May in the driveway about twenty feet from the door. Officer May could smell the odor of raw marijuana, which he believed was coming from the house. He also smelled the odor of burnt marijuana on Darring's person as they spoke. Darring admitted shooting at the pavement to get Holland to leave his property. Officer May then asked Darring for identification and the two walked onto the front porch. Darring opened the storm door and then slightly opened the main door before closing it and telling Officer May that he did not want him to come inside. At that time, Officer May smelled the odor of marijuana coming from inside the house. Officer May then placed Darring under arrest for criminal recklessness for the shooting incident.

[6] Additional IMPD officers arrived at the scene to assist. Several noticed the strong odor of raw marijuana near the house. Each time the exhaust fan on top of the house kicked on, the marijuana smell became stronger outside. Additionally, two potted marijuana plants were located directly behind Darring's shed and marijuana pieces – referred to as shake – were discovered along the fence line between the Darring's and Holland's properties. Darring

had several surveillance cameras around the outside of his house, one of which Officer May took down at some point.

[7] Officer May called for a narcotics detective because he believed Darring had a grow operation inside the house. IMPD Sergeant Stephan Crooke arrived on the scene around 4:30 a.m. and spoke with Officer May and then Holland. Holland told Sergeant Crooke about the incident and then informed him that he had been in Darring's house the prior week and observed thirty pounds of marijuana. Holland indicated that he had been in Darring's house several times and had smoked marijuana with Darring inside the house before. Darring, who was handcuffed outside, refused to speak with Sergeant Crooke. Sergeant Crooke then knocked on the front door and walked around the house. In addition to smelling a strong odor of raw marijuana near the shed and fence line, Sergeant Crooke could smell it coming from inside the house. Based on his training and experience Sergeant Crooke felt confident that there was "probably a grow in there possibly, or a large amount" of raw marijuana inside. *Transcript Vol. III* at 44.

[8] After gathering information from the scene, Sergeant Crooke returned to his office to prepare a probable cause affidavit for a search warrant. The affidavit written by Crooke read, in relevant part, as follows:

> On 8/23/2014 at approximately 2:12 AM, Officer D. May and Officer S Greene received a run to a person shot at 3132 W 61st St. When Officer May arrived he spoke with the victim, a Jason Holland. Holland stated that his neighbor, Chris Darring, had shot at him with a semi automatic handgun while the two were

in the yard between their residences. Chris Darring lives at 3132 W. 61st St and Jason Holland lives in the residence immediately to the east.

Officer May went to…Darring's residence, and knocked on the door. Chris Darring answered the door and came onto the porch to talk with officers. Officer May could immediately smell a strong odor of what he recognized as marijuana coming from inside the residence. Officer May has been in Law Enforcement for 18 years. Officer May knows the odor of marijuana from his training as a law enforcement officer and past experience investigating numerous marijuana cases.

While assisting Officers were conducting their investigation into the person shot report by looking for spent shell casings in the yard between the two residences, Officer S Greene and Officer Kazanauth identified two marijuana plants outside by the shed at 3132 W. 61st St.

I arrived on scene at approximately 430 AM. At that time I went to 3132 W 61st St. and knocked on the door. I observed cameras on the outside of the residence, and I could also smell the odor of raw marijuana. I spoke with Chris Darring. I attempted to obtain consent to search and Darring stated he wanted an attorney.

Through my training and experience as a law enforcement officer, I have become familiar with the odor of marijuana. I was exposed to the sight and odor of both raw and burned marijuana at the training academy and have participated in hundreds of arrests for marijuana. I immediately knew, based on this training and experience with the sight and odor of marijuana, that the odor inside of the residence was raw marijuana.

I also talked with the victim Jason Holland. Holland had a small graze on his leg that appeared consistent with a graze wound from a gun shot. Holland further said that he was in the residence at 3132 W 61st St last week and observed about 30 pounds of marijuana inside the residence. Holland stated he is a casual smoker of marijuana and knows marijuana. Holland stated that he would buy marijuana from Chris Darring and they were friends for awhile.

Based upon the facts and circumstances set forth above, I believe, and have good cause to believe, that probable cause exists to believe that there is a controlled substance, that is: Marijuana, inside of the residence…which would constitute evidence of a crime under the Indiana Uniform Controlled Substances Act.

*Motion to Suppress Exhibits*, Defendant's Exhibit 27. The warrant was issued at 8:46 a.m.

[9] During the subsequent search of the residence, police recovered approximately fifteen pounds of marijuana contained in heat-sealed packages and ball jars, as well as cocaine, psilocybin mushrooms, and 155 Xanax pills. Officers also found evidence of marijuana wax being manufactured in the kitchen and garage. Additionally, glass smoking pipes, scales, a heat-sealing device, a ledger, a safe, a surveillance system, and over $13,000 in cash were found. The raw marijuana smell "overtook" Officer May when he walked inside the home to perform the search. *Transcript Vol. II* at 185.

[10] On August 26, 2014, the State charged Darring with Level 3 felony dealing in a schedule IV controlled substance, Level 5 felony dealing in marijuana, Level 6

felony possession of cocaine, Class B misdemeanor possession of marijuana,[2] Class A misdemeanor possession of a controlled substance, and Class B misdemeanor criminal recklessness. The State later amended the charging information to elevate the criminal recklessness count to a Level 6 felony.

[11] In September 2015, Darring filed a motion to suppress the evidence found inside his house, challenging the validity of the search warrant and, particularly, the affidavit supporting the warrant. The trial court held a Franks hearing[3] on February 22, 2016, and September 19, 2016. The parties later filed written arguments in support of their respective positions. Darring's arguments were laid out more precisely in the memorandum he filed with the trial court on April 20, 2017. Specifically, he argued that the affidavit upon which the search warrant was based contained material factual omissions that were made with reckless disregard as to whether the omissions made the affidavit misleading. Darring complained that Sergeant Crooke left out the following facts from the affidavit: Officer May had responded to the same location the previous morning to break up a dispute between Darring and Holland; marijuana shake was discovered along the fence line; raw marijuana could be smelled along the fence

---

[2] This count was alleged in a separate part to be a Level 6 felony on the basis of a prior conviction.

[3] In *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), the United States Supreme Court held that an evidentiary hearing is required "where the defendant makes a substantial preliminary showing that a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause". At this hearing, referred to as a Franks hearing, the defendant is allowed to challenge the factual statements made in a search warrant affidavit. *Id.*; *see also Keeylen v. State*, 14 N.E.3d 865, 870 n.3 (Ind. Ct. App. 2014), *clarified on reh'g*, 21 N.E.3d 840 (2014), *trans. denied*.

line and near the shed; and Officer May smelled marijuana throughout the neighborhood upon exiting his vehicle on the night in question. In addition to these omissions, Darring noted that due to a misunderstanding, the affidavit alleged that Officer May talked with Darring after knocking on the front door and smelled marijuana when the door was opened. Darring also emphasized his expert witness's testimony opining that no odor of raw marijuana would have been emanating from the home at the time the officers were on the scene because of the way the marijuana was packaged.

[12] In sum, Darring argued that if the correct and full information had been included in the affidavit, "it may have suggested to the issuing magistrate that the smell of marijuana may have been coming from somewhere outside the house" rather than inside the residence and that "Holland's statements were motivated by ill-will toward Darring". *Appendix Vol. II* at 57.

[13] On April 27, 2017, the trial court issued an order denying Darring's motion to suppress. Thereafter, Darring filed a motion to certify the ruling for interlocutory appeal, which the trial court granted on June 19, 2017. This court accepted jurisdiction of the appeal on August 7, 2017, pursuant to Ind. Appellate Rule 14(B). The interlocutory appeal is now before us.

## Discussion & Decision

[14] Our review of the denial of a motion to suppress evidence is similar to other sufficiency issues. *Keeylen*, 14 N.E.3d at 871. We will affirm if there was substantial evidence of probative value to support the trial court's ruling. *Id*. In

making this determination, we will not reweigh the evidence, and we will consider conflicting evidence most favorably to the ruling. *Id*. Unlike other sufficiency matters, however, we will consider uncontested evidence that is favorable to the defendant. *Id*.

[15] Darring argues that the probable cause affidavit contained false information and material omissions and was, therefore, submitted by Sergeant Crooke with a reckless disregard for the truth. Further, Darring contends that adding back in the material omissions and removing the false information results in the affidavit lacking probable cause.

[16] The Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution both require probable cause for the issuance of a search warrant. *Keeylen*, 14 N.E.3d at 871. The determination of probable cause is based on the facts of each case and requires the issuing magistrate to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place." *Id*.

[17] "A warrant is invalid where the defendant [establishes] by a preponderance of the evidence that the affidavits used to obtain the warrant contain perjury by the affiant, or a reckless disregard for the truth by him, and the rest of the affidavit does not contain materials sufficient to constitute probable cause." *Jones v. State*, 783 N.E.2d 1132, 1136 (Ind. 2003) (citing *Franks*, 438 U.S. at 171-72). "[M]istakes and inaccuracies of fact stated in a search or arrest affidavit will not

vitiate the reliability of the affidavits so long as such mistakes were innocently made." *Utley v. State*, 589 N.E.2d 232, 236-37 (Ind. 1992).

[18] In addition to the inclusion of false or misleading testimony in the affidavit, the defendant may also establish that the affiant omitted information "essential to a finding of probable cause". *Keeylen*, 14 N.E.3d at 872. In the case of an alleged omission, the defendant must establish that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting the information and show that probable cause would no longer exist if such omitted information were considered by the issuing judge. *Id.* "*Franks* protects only against omissions that are 'designed to mislead, or that are made in reckless disregard of whether they would mislead'". *Id.* (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)).

[19] We turn first to the inaccurate information contained in the affidavit. There is no dispute that Sergeant Crooke got it wrong when he indicated in the affidavit that Officer May initially knocked on Darring's door, Darring then came out to talk with him on the porch, and Officer May immediately smelled a strong odor of marijuana coming from inside. In fact, Darring met Officer May outside about twenty feet from the door. A few minutes later, Officer May followed closely behind as Darring went onto the porch and started to enter through the

front door to obtain his identification, and Officer May then smelled the odor of raw marijuana coming from inside the house.[4]

[20] As Darring conceded below, this mistake was due to a misunderstanding. We can find no indication in the record that this misinformation in the affidavit was made with reckless disregard for the truth or that the mistake was anything other than innocently made. Nor do we believe this slight mischaracterization of when Officer May smelled marijuana at the front door was critical to the probable cause determination.[5] Further, we find meritless Darring's unsupported assertion that Sergeant Crooke engaged in reckless disregard for the truth when he signed the affidavit without having personal knowledge of the events prior to his arrival and without Officer May's review. *See Utley*, 589 N.E.2d at 236 ("as long as participating officers seeking the issuance of a search warrant collectively have probable cause, their individual knowledge can be imputed to the officer signing the affidavit in support of the search warrant").

---

[4] Both Officer May and Sergeant Crooke testified that they smelled the odor of raw marijuana coming from inside the house. Darring directs us to his expert's testimony opining that it would have been impossible for the officers to attribute the smell to the house. We agree with the State that Darring's argument in this regard is an improper request to reweigh the evidence and judge the credibility of the witnesses.

[5] We do not agree that this case is similar to *Jaggers v. State*, 687 N.E.2d 180 (Ind. 1997). In *Jaggers*, police obtained a search warrant of the defendant's home based on an anonymous tip and an officer's testimony that two marijuana plots were located near the defendant's home. Actually, however, the plots were two and six miles from the home. Our Supreme Court held that this mischaracterization, even if innocent, was "critical when viewed in the factual context." *Id*. at 185. The Court explained: "Placing the plots 'near' Jaggers's residence implied a link between Jaggers and the plots that was not supported by the evidence. This, in turn, implied involvement by Jaggers in marijuana trafficking that was otherwise not reasonably inferable from the officer's testimony." *Id*. In the case at hand, the evidence establishes that Officer May smelled the odor of marijuana at the front door when Darring opened it. We do not find critical to the probable cause determination whether this occurred when Officer May first spoke with Darring or a few minutes later.

[21]    As for the omissions, we initially observe that Darring improperly asserts several alleged omissions that he did not raise below. Most notably, Darring argues for the first time on appeal that Sergeant Crooke failed to state in the affidavit that the potted marijuana plants found behind the shed were in an area where there was no fence dividing the properties and that it was not clear which property the pots were actually on. Because Darring did not advance this basis below, it is waived. *See Merritt v. State*, 803 N.E.2d 257, 261 (Ind. Ct. App. 2004) (issue waived where the State did not advance the argument in its memorandum in opposition to the motion to suppress or at the suppression hearing).

[22]    We will limit our discussion to the omissions raised in Darring's memorandum to the trial court in support of his motion to suppress. Darring alleges the following material omissions: 1) the previous day, Officer May had responded to a disturbance between Holland and Darring; 2) marijuana shake was found along the fence line; 3) officers smelled the odor of raw marijuana along the fence line and near the shed; and 4) Officer May smelled the odor of marijuana throughout the neighborhood upon exiting his vehicle on the night in question.

[23]    Aside from noting these factual omissions, Darring makes no attempt to establish that Sergeant Crooke made them deliberately to mislead the issuing magistrate or with reckless disregard. Moreover, we cannot agree with Darring that these factual omissions were material to the determination of probable cause. *See Query v. State*, 745 N.E.2d 769, 772 (Ind. 2001) ("The typical

formulation of 'material' facts is that they cast doubt on the existence of probable cause.").

[24] With respect to the first omission, Darring argues that the previous day's police run was critical information to a fair probable cause determination because it would have "established for the issuing magistrate a motive for Holland to accuse Darring." *Appellant's Brief* at 16. We agree with the State that this evidence was immaterial because the animosity between Holland and Darring was apparent from the fact that Darring shot at Holland.

[25] Additionally, we reject Darring's undeveloped claim that Holland's statements to Sergeant Crooke should not have been included in the affidavit because his credibility was unknown. Darring simply directs us to *Jaggers* for the proposition that "uncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant." *Jaggers*, 687 N.E.2d at 182. Unlike in *Jaggers*, however, Holland's identity was not unknown to the officers. *See id.* (observing that use of information from anonymous informants presents heightened reliability concerns because there is no possibility of criminal liability for filing a false police report). Further, Holland lived next door to Darring, had just been shot at and injured by Darring, and implicated himself in criminal activity when speaking with Sergeant Crooke. Holland's statements were properly included in the probable cause affidavit and were just a small part of the evidence supporting probable cause.

[26] Finally, we turn to the omissions related to the odor and existence of raw marijuana on the curtilage of Darring's home, as well as the general odor of marijuana Officer May detected upon exiting his vehicle. The affidavit referenced the two marijuana plants near the shed but did not indicate that marijuana shake was found along the fence line or that marijuana odor was detected in these areas and generally in the neighborhood. Darring argues that, if included, these facts would have caused the magistrate to "conclude that there was not a reasonable ground to believe Darring's residence was emitting the odor." *Appellant's Brief* at 15. We cannot agree. The fact that there were other sources of the odor does not negate the fact that both Officer May and Sergeant Crooke smelled the odor of raw marijuana coming from inside the house. In particular, Sergeant Crooke averred that he knocked on the door, observed cameras on the outside of the home, and could smell the odor of raw marijuana. Sergeant Crooke went on to state in the affidavit that based on his training and experience, he immediately knew that the odor inside the residence was raw marijuana.

[27] In sum, even if all of this omitted evidence had been included in the affidavit, probable cause for the issuance of the search warrant would still exist. Accordingly, the trial court properly denied Darring's motion to suppress evidence discovered as a result of the search.

[28] Affirmed.

Robb, J. and Vaidik, C.J., concur.