## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 22 2020, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ann M. Sutton
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Anthony Hillman,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 22, 2020

Court of Appeals Case No.
19A-CR-3011

Appeal from the Marion Superior Court

The Honorable Alicia Gooden, Judge

Trial Court Cause No.
49G21-1808-PC-26194
49G21-1605-F4-19249

**Tavitas, Judge.**

# Case Summary

In this combined appeal pursuant to the *Davis/Hatton* procedure, Anthony Hillman appeals his conviction for unlawful possession of a firearm by a serious violent felon, a Level 4 felony, and the post-conviction court's ("PC Court") denial of his petition for post-conviction relief ("PCR"). We affirm.

# Issues

Hillman raises three issues, which we restate as:

> I. Whether the trial court properly admitted evidence found in the vehicle pursuant to a search warrant.
>
> II. Whether the evidence is sufficient to sustain Hillman's conviction.
>
> III. Whether Hillman was denied the effective assistance of trial counsel.

# Facts

On May 17, 2016, Officer Justin Gough with the Indianapolis Metropolitan Police Department ("IMPD") was sitting on 37th Street at Orchard Avenue when he observed a red Alero driving northbound on Orchard Avenue. The Alero parked in front of a residence on the 3500 block of Orchard Avenue. Officer Gough drove southbound on Orchard Avenue and drove past the parked vehicle. Officer Gough saw a person he believed to be Hillman get out of the driver's side of the vehicle. Officer Gough was familiar with Hillman through other community engagements.

[4] Officer Gough "circled around the block" by driving eastbound on 34th Street to Caroline Avenue, north on Caroline Avenue to 37th Street, west on 37th Street to Orchard Avenue, and south on Orchard Avenue. Direct Appeal Tr. Vol. II p. 49. The drive to turn around took Officer Gough "approximately two minutes." *Id.* at 79. Officer Gough then parked in front of the Alero.

[5] Officer Gough saw Hillman standing approximately ten feet from the rear of the Alero, which was still running. Hillman was wearing the same clothing and had the same long dreadlocks as the man that exited the vehicle a couple minutes earlier. Officer Gough called Hillman by name and asked if Hillman would "mind coming over and speaking with" Officer Gough. *Id.* at 162. Hillman answered, "Gough, . . . why are you always messing with me or what do you need" and started walking toward Officer Gough. *Id.* Another man was also nearby walking away, and when the man turned around, Officer Gough recognized the man as Billy Hawkins. Officer Gough was aware that Hawkins was wanted on an active arrest warrant, and Officer Gough placed Hawkins in handcuffs.

[6] Officer Christopher Cooper and Sergeant Matthew Thomas then arrived on the scene to assist Officer Gough. Sergeant Thomas walked past the Alero, where he saw an "AR-15 style rifle" resting on both the front passenger floorboard and the front passenger seat. *Id.* at 92. Officer Cooper drafted a search warrant affidavit for the Alero. The search warrant affidavit, however, did not mention that the Alero and its occupants were out of Officer Gough's sight for a couple

of minutes while he circled the block. The trial court granted a search warrant for the Alero.

[7] While waiting for the search warrant, a young woman approached Sergeant Thomas and asked if the vehicle could be released to her; Sergeant Thomas asked if the vehicle belonged to the woman, and she responded that it did not. Sergeant Thomas asked for the woman's identification, and she refused to provide her identification and left.

[8] Inside the Alero, officers found the loaded rifle resting on the front passenger floorboard and the front passenger seat; a loaded Glock handgun underneath the driver's seat; a ski mask on the front passenger seat; a Lacoste hat on the front passenger seat; another ski mask behind the driver's seat; and body armor on the back seat. The rifle had a spent casing catcher that contained twenty-three spent shell casings. Officer Gough previously saw Hillman wearing a Lacoste hat identical to the hat found in the Alero. DNA testing results indicated that "the major contributor of DNA recovered from . . . the ski mask recovered from the front passenger seat of the red Alero, matche[d] the DNA of Billy Hawkins." Tr. Vol. II pp. 170-71.

[9] The State ultimately charged Hillman with: Count I, unlawful possession of a firearm by a serious violent felon, a Level 4 felony, for possessing the handgun; and Count II, unlawful possession of a firearm by a serious violent felon, a Level 4 felony, for possessing the rifle. In February 2017, Hillman filed a petition for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct.

2674 (1978). Hillman alleged that the search warrant affidavit contained "material omissions and misstatements" because the affidavit did not mention that the Alero was out of Officer Gough's sight for a few minutes while he drove around the block. Appellant's App. Vol. II p. 140.

[10] Hillman also filed a motion to suppress evidence pursuant to the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Hillman moved to suppress the evidence seized as a result of the search of the Alero and argued: (1) "[t]he affidavit submitted in support of the issuance of the search warrant would not constitute probable cause if the true facts were related to the neutral and detached issuing magistrate"; and (2) "[t]he search and seizures were unreasonable under the Indiana Constitution." *Id.* at 143.

[11] After a hearing on March 21, 2017, the trial court denied the motion to suppress. The trial court agreed that the information regarding Officer Gough circling the block "should have been included in the affidavit, in order to illustrate a complete picture for the reviewing judicial Officer." *Id.* at 222. The trial court, however, found that "there was sufficient information presented to the judicial officer to determine that probable cause existed." *Id.* at 223. Moreover, the trial court found that, "[e]ven if this court found that Officer Cooper omitted facts with the 'intent to make the affidavit misleading or with reckless disregard for whether it would be misleading' the affidavit supplemented with the omitted information would still have been sufficient to

support a finding of probable cause." *Id.* (quoting *Ware v. State*, 859 N.E.2d 708 (Ind. Ct. App. 2007)).

[12] Hillman also filed a motion in limine to prohibit the State from mentioning, in part, "[a] desire to talk to Mr. Hillman about things going on in the neighborhood" and "[a] prior shooting in 34th Street." Appellant's App. Vol. III p. 8. The hearing on the motion in limine and the trial court's order are not included in the record presented to us. According to the parties, however, the trial court ruled that the search warrant affidavit would not be admissible at trial. *See* Direct Appeal Tr. Vol. II p. 137.

[13] Hillman's jury trial was held in August 2017, and Hillman was represented by Attorney David Hennessy. During Hillman's cross-examination of Officer Cooper, Hillman questioned the officer regarding the search warrant affidavit, and the trial court found that Hillman had opened the door to limited questioning regarding the search warrant affidavit. On redirect examination, the State elicited the following testimony:

> Q. Officer Cooper back on May 17th 2016, [ ] did you and Officer Gough intend to speak with two black males about recent violent crimes in the city?
>
> A. Yes.
>
> Q. Did you intend to speak to those two individuals [ ] about a shooting that just recently occurred in the area?
>
> A. Yes.

*Id.* at 157-58.

[14] The jury found Hillman not guilty of illegal possession of the handgun in Count I, but found Hillman guilty of illegal possession of the rifle in Count II. Hillman then waived his right to a jury trial for the second phase of the trial, and the trial court found Hillman guilty of unlawful possession of a firearm by a serious violent felon, a Level 4 felony. The trial court sentenced Hillman to ten years with three years suspended; Hillman was ordered to serve four years of the executed portion in the Department of Correction followed by three years in community corrections.[1]

[15] Hillman initiated a direct appeal. Hillman then filed a verified motion for leave to file a *Davis/Hatton* petition.[2] This Court granted Hillman's motion in part as follows:

> This Court dismisses this appeal without prejudice so that
> Appellant may pursue post-conviction relief before the trial court.
> If any part of the trial court's forthcoming ruling on Appellant's

---

[1] In October 2019, the trial court modified Hillman's sentence to seven years of home detention.

[2] Hillman used the *Davis/Hatton* procedure as outlined in Appellate Rule 37 to stay his direct appeal and pursue a petition for post-conviction relief in the trial court. *See Davis v. State*, 267 Ind. 152, 368 N.E.2d 1149 (1977); *Hatton v. State*, 626 N.E.2d 442 (Ind. 1993).

> If, after a full evidentiary hearing, the postconviction relief petition is denied, the appeal can be reinstated. Thus, in addition to the issues initially raised in the appeal, the issues litigated in the postconviction relief proceeding . . . can also be raised. In this way, even if the trial court denies the postconviction claim . . . , a full hearing and record on the issue will be included in the appeal.

*Schlabach v. State*, 842 N.E.2d 411, 415 (Ind. Ct. App. 2006), *trans. denied*. "Once the petition for postconviction relief is denied after a hearing, and the direct appeal is reinstated, the direct appeal and the appeal of the denial of postconviction relief are consolidated." *Id.* at 415-16.

> petition for post-conviction relief is adverse to Appellant,
> Appellant may, after filing a new notice of appeal, raise the issues
> he would have raised in this appeal along with the new issues
> created by the trial court's ruling on the petition for
> postconviction relief.

*Hillman v. State*, Cause No. 49A02-1711-CR-2638, May 9, 2018 Order.

In August 2018, Hillman filed a petition for PCR. Hillman alleged that he received ineffective assistance of trial counsel because: (1) Attorney Hennessy failed to strike a juror; (2) Attorney Hennessy violated his own motion in limine and opened the door to questions regarding the search warrant affidavit; (3) Attorney Hennessy failed to call three witnesses to rebut the State's evidence; and (4) Attorney Hennessy failed to convince Hillman to accept the State's final plea offer. After a hearing, the PC Court entered findings of fact and conclusions of law denying Hillman's petition for PCR. Hillman now appeals.

# Analysis

## I. Admission of Evidence

Hillman argues that the trial court erred by denying his motion to suppress the evidence found as a result of the search warrant. According to Hillman, the search warrant affidavit omitted critical information. Because Hillman appeals from a completed trial, "the issue is 'more appropriately framed' as whether the evidence was admissible at trial." *Brown v. State*, 929 N.E.2d 204, 206 n.1 (Ind. 2010) (quoting *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003)). The admission of evidence is generally left to the discretion of the trial court,

and we review admissibility challenges for abuse of that discretion. *Jacobs v. State*, 76 N.E.3d 846, 849 (Ind. 2017). "When, however, admissibility turns on questions of constitutionality relating to the search and seizure of that evidence, our review is de novo." *Id.*

[18] Under the Fourth Amendment to the United States Constitution, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."[3] U.S. Const. amend. IV. To preserve that right, a judicial officer may issue a warrant only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *McGrath v. State*, 95 N.E.3d 522, 527 (Ind. 2018). "The determination of probable cause is based on the facts of each case and requires the issuing magistrate to 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place.'" *Darring v. State*, 101 N.E.3d 263, 268 (Ind. Ct. App. 2018) (quoting *Keeylen v. State*, 14 N.E.3d 865, 871 (Ind. Ct. App. 2014), *clarified on reh'g*, 21 N.E.3d 840 (Ind. Ct. App. 2014), *trans. denied*). "[P]robable cause requires only that the information available to the officer would lead a person of reasonable caution to believe the items could be

---

[3] Hillman makes no separate argument regarding the Indiana Constitution. Accordingly, any state constitutional claim is waived. *See Abel v. State*, 773 N.E.2d 276, 278 n.1 (Ind. 2002) ("Because Abel presents no authority or independent analysis supporting a separate standard under the state constitution, any state constitutional claim is waived.").

useful as evidence of a crime." *Jones v. State*, 783 N.E.2d 1132, 1136 (Ind. 2003).

[19]     In *Franks v. Delaware*, 438 U.S. 154, 171-72, 98 S. Ct. 2674, 57 L.Ed.2d 667 (1978), the U.S. Supreme Court held that a warrant is invalid where the defendant can show by a preponderance of the evidence that the affidavits used to obtain the warrant contain perjury by the affiant, or a reckless disregard for the truth by him, and the rest of the affidavit does not contain materials sufficient to constitute probable cause. *See id.* at 171-72, 98 S. Ct. 2674. Furthermore, fruits of the search will be excluded just as if the affidavit did not contain allegations sufficient to constitute probable cause. *Id.*, at 155, 98 S. Ct. 2674.

*Jones*, 783 N.E.2d at 1136.

[20]     "[M]istakes and inaccuracies of fact stated in a search or arrest affidavit will not vitiate the reliability of the affidavits so long as such mistakes were innocently made." *Darring*, 101 N.E.3d at 268 (quoting *Utley v. State*, 589 N.E.2d 232, 236-37 (Ind. 1992), *cert. denied*). "In addition to the inclusion of false or misleading testimony in the affidavit, the defendant may also establish that the affiant omitted information 'essential to a finding of probable cause.'" *Id.* (quoting *Keeylen*, 14 N.E.3d at 872). "In the case of an alleged omission, the defendant must establish that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting the information and show that probable cause would no longer exist if such omitted information were considered by the issuing judge." *Id.* "*Franks* protects only against omissions that are 'designed to

mislead, or that are made in reckless disregard of whether they would mislead.'" *Id.* (quoting *Keeylen*, 14 N.E.3d at 872).

[21]     Here, the officers requested a search warrant for the Alero. Officer Cooper's search warrant affidavit provided, in part:

> This investigation commenced on May 17, 2016 at approximately 17:38 by observing two black males standing on the side of the road in the 3500 block of Orchard Ave. Officer Gough and myself were going to speak with the two black males about recent violent crimes happening in the city as a shooting just recently occurred in the area. Officer Gough and myself were not able to speak to these two individuals because by the time we turned around in our vehicles those individuals were no longer there. However, while Officer Gough was driving south on Orchard Ave[,] he observed a red Oldsmobile Alero . . . parked on the east side of the street in front of 3549 Orchard Ave. The red Oldsmobile Alero also appeared to be parked more than 12 inches from the curb. Officer Gough saw a black male, later identified as Anthony Hillman, exit the driver seat of the Oldsmobile Alero.

> Officer Gough parked and decided to go up and speak with [ ] Mr. Hillman. Officer Gough said that when he approached Mr. Hillman he observed another black male, Billy Hawkins, standing next to him. Mr. Hawkins has an open warrant for his arrest and officers were out looking for him prior to this stop. Officer Cooper arrived on scene and assisted Officer Gough in placing Mr. Hawkins into handcuffs.

> Sergeant Thomas arrived on scene and was walking past the red Oldsmobile Alero, that Mr. Hillman exited from. The passenger window and back passenger Window were both up and the doors were shut. Sergeant Thomas observed in the front passenger

compartment a black rifle leaning against the front of the passenger seat and the front passenger floor board. Sergeant Thomas quickly looked at me and advised me to secure Mr. Hillman, which I did.

Once Mr. Hillman was secure I walked by the passenger side of the red Oldsmobile Alero and observed that black rifle that Sergeant Thomas described. I also observed a black ski mask laying on the front passenger seat. On the back passenger seat I could see a bullet proof vest laying [sic] on it.

Mr. Hillman has prior convictions for Unlawful Possession of a Firearm by a Serious Violent Felon, cause number 49G20-0904-FB-036754 in 2009 and Burglary, cause number 49G05-0709-FB-178324 in 2009.

Direct Appeal Ex. Vol. I p. 9. The search warrant affidavit did not mention that the Alero and its occupants were out of Officer Gough's sight for a couple of minutes while he circled the block.

[22] Hillman was required to demonstrate that probable cause would no longer exist if such omitted information had been considered by the issuing judge. Even if the issuing court had been aware that the Alero and its occupants were out of Officer Gough's sight for two minutes, the issuing court was aware of sufficient facts warranting probable cause to search the Alero, including: (1) Hillman was seen exiting the Alero and had prior convictions for unlawful possession of a firearm by a serious violent felon and burglary; (2) Sergeant Thomas arrived on the scene, walked past the Alero, and saw a rifle in the front passenger seat area of the vehicle; and (3) Officer Cooper also saw the rifle along with a ski mask

and bullet proof vest in the vehicle. The fact that the Alero and its occupants were out of Officer Gough's sight for a couple minutes does not negate the fact that the rifle, ski mask, and bullet proof vest were in plain view in the Alero when the officers walked past.

[23] Even if the issuing judge had been aware that the Alero and its occupant were out of Officer Gough's sight for two minutes, this evidence is immaterial where the rifle was in plain view in the Alero. Accordingly, the admission of the evidence found during the search of the Alero pursuant to the search warrant did not violate Hillman's Fourth Amendment rights. *See, e.g., Darring*, 101 N.E.3d at 270 (holding that, even if all of the "omitted evidence had been included in the affidavit, probable cause for the issuance of the search warrant would still exist").

## II. Sufficiency of the Evidence

[24] Next, Hillman argues that the evidence is insufficient to support his conviction for unlawful possession of a firearm by a serious violent felon, a Level 4 felony. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985), *cert. denied*), *cert. denied*. Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84). "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84)*; see also*

*McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

[25] The offense of unlawful possession of a firearm by a serious violent felon is governed by Indiana Code Section 35-47-4-5, which provides that: "A serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Level 4 felony." Ind. Code 35-47-4-5(c). Hillman does not dispute that he qualified as a serious violent felon; rather, Hillman contends that he did not knowingly or intentionally possess the rifle.

[26] A conviction for possession of contraband may rest upon proof of either actual or constructive possession. *Houston v. State*, 997 N.E.2d 407, 409-10 (Ind. Ct. App. 2013). Actual possession occurs when a person has direct physical control over the item. *Id.* at 410. A person constructively possesses contraband when the person has: (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). Hillman was not found in actual possession of the rifle; accordingly, constructive possession is at issue here.

"The capability prong [of constructive possession] may be satisfied by 'proof of a possessory interest in the premises in which [contraband is] found.'" *Houston*, 997 N.E.2d at 410 (quoting *Monroe v. State*, 899 N.E.2d 688, 692 (Ind. Ct. App. 2009)). "This is so regardless of whether the possession of the premises is exclusive or not." *Id.* There is no evidence that Hillman owned the Alero. The State, however, presented evidence that Officer Gough saw a man that he believed to be Hillman getting out of the Alero. After Officer Gough circled the block, Hillman and Hawkins were standing near the Alero, which was still running. Hillman was wearing the same clothing and had the same long dreadlocks as the man that exited the vehicle a couple minutes earlier. The rifle was in plain view in the front passenger seat area of the Alero. A Lacoste hat was found in the Alero near the rifle, and Officer Gough saw Hillman wearing the same type of hat previously. The State presented evidence that Hillman was in possession of the Alero and had recently exited the vehicle, where the rifle was in plain view. Accordingly, the State presented sufficient evidence to prove that Hillman had the capability to maintain dominion and control over the rifle.

With regard to the intent prong of the test, where a defendant's possession of the premises upon which contraband is found is not exclusive, the inference of intent to maintain dominion and control over the contraband must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the contraband's presence. *Id.* Those additional circumstances include: (1) incriminating statements by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest

manufacturing[4], (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant. *Henderson v. State*, 715 N.E.2d 833, 836 (Ind. 1999).

[29] There is no indication that Hillman had exclusive control over the Alero. Accordingly, we will analyze whether additional circumstances exist that point to Hillman's knowledge of the rifle. Hillman, who was seen driving the Alero, was in close proximity to the rifle, which was in the front passenger seat area of the Alero. The rifle would have been in Hillman's plain view based upon the officers' observations and photographs of the Alero that were admitted into evidence. Further, when officers searched the Alero, a Lacoste hat was found next to the rifle, and Hillman was seen wearing the same type of hat previously, which shows a mingling of the rifle with other items owned by Hillman. Under these circumstances, the State demonstrated Hillman's intent to maintain dominion and control over the contraband.

[30] The State presented sufficient evidence to show that Hillman had: (1) the capability to maintain dominion and control over the rifle; and (2) the intent to maintain dominion and control over it. Pursuant to *Houston*, 997 N.E.2d at 410, the State was not required to show exclusive possession. We conclude that Hillman constructively possessed the rifle, which was found in the Alero.

---

[4] This factor is inapplicable here.

Accordingly, the evidence is sufficient to sustain Hillman's conviction for unlawful possession of a firearm by a serious violent felon, a Level 4 felony.

### III.  Ineffective Assistance of Trial Counsel

[31]  Hillman appeals the PC Court's denial of his petition for post-conviction relief. Post-conviction proceedings are civil proceedings in which a petitioner may present limited collateral challenges to a conviction and sentence. *Gibson v. State*, 133 N.E.3d 673, 681 (Ind. 2019); Ind. Post-Conviction Rule 1(1)(b).  The petitioner bears the burden of establishing his claims by a preponderance of the evidence. *Gibson*, 133 N.E.3d at 681; P-C.R. 1(5). When, as here, the petitioner appeals from a negative judgment denying post-conviction relief, he "must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision." *Gibson*, 133 N.E.3d at 681.  When a petitioner fails to meet this "rigorous standard of review," we will affirm the post-conviction court's denial of relief. *Id.*  Under this standard of review, "[we] will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Pruitt v. State*, 903 N.E.2d 899, 905 (Ind. 2009).

[32]  Hillman appeals the PC Court's denial of his claim of ineffective assistance of trial counsel.  To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v.*

*Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), *cert. denied*. The failure to satisfy either prong will cause the claim to fail. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006).

[33] A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Woodson v. State*, 961 N.E.2d 1035, 1041 (Ind. Ct. App. 2012), *trans. denied*. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *McCullough v. State*, 973 N.E.2d 62, 74 (Ind. Ct. App. 2012), *trans. denied*. "[A] defendant must offer strong and convincing evidence to overcome this presumption." *Id.* Isolated poor strategy, inexperience, or bad tactics do not necessarily constitute ineffective assistance. *Id.*

[34] To demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Weisheit v. State,* 109 N.E.3d 978, 983 (Ind. 2018) (quoting *Strickland,* 466 U.S. at 694, 104 S. Ct. 2052), *cert. denied*.

[35] Although Hillman raised several allegations of ineffective assistance in his PCR petition, on appeal, Hillman only develops an argument regarding his contention that his trial counsel was ineffective for opening the door to the admission of prejudicial or unfavorable portions of the search warrant affidavit.

Hillman's contentions that his trial counsel was ineffective for failing to strike a juror, failing to call three witnesses to rebut the State's evidence, and failing to convince Hillman to accept the State's final plea offer are waived for failure to make cogent arguments. *See* Ind. Appellate Rule 46(A)(8). Accordingly, we will address only whether Hillman's trial counsel was ineffective for opening the door to the admission of certain evidence from the search warrant affidavit.

[36] Hillman filed a motion in limine to prohibit the State from mentioning, in part, the officers' "desire to talk to Mr. Hillman about things going on in the neighborhood" and about "[a] prior shooting in 34th Street." Appellant's App. Vol. III p. 8. According to the parties, the trial court ruled that the search warrant affidavit would not be admissible at trial. *See* Direct Appeal Tr. Vol. II p. 137.

[37] During the jury trial, Hillman's counsel questioned Officer Cooper on cross-examination regarding his search warrant affidavit. Specifically, Hillman's attorney asked:

> You remember indicating that this investigation commenced on May 17th, 2016 at approximately 17:38 when you observed two black males standing on the side of the road in the 3500 block of Orchard Avenue? You and Officer Gough were going to talk to them, but you weren't able to because by the time you turned around they were gone.

*Id.* at 132-33. Officer Cooper responded, "Yes, I do remember that." *Id.* at 133. Hillman's counsel also asked Officer Cooper several other questions regarding the content of the search warrant affidavit.

[38]     Before redirect examination, the State argued that Hillman had opened the door to the admission of the entire search warrant affidavit even though it contained evidence that had been excluded pursuant to the trial court's order on the motion in limine. The trial court found:

> I think that Mr. Hennessy's questions [ ] open the door to a portion of the search warrant affidavit. I — I do not agree that he has opened the door to the prior convictions. [ ]But I think that the first paragraph under the investigation portion is — I think that entire paragraph based on the questions that were asked, I believe that [ ] the doctrine of completeness would apply, and that Mr. Hennessy has opened the door to that information coming in. I don't see any reason why based on the questions that were asked, [ ] we could not redact the portion [ ] regarding Mr. Hawkins and his bullet proof vest. It's already subject to motion in limine. I don't think the questions go to that and I don't — I don't think that's proper. . . . [T]hat question in [and] of itself has left a gap into what the jury might be wondering why [ ] this officer wished to speak to the two males that he saw. And that is directly verbatim the language except for the part about recent violent crimes happening in the city as a shooting just recently reported in the area. I think that absolutely comes in, based on the question that was asked. . . . I'm not gonna allow you to put the whole affidavit in, based on the question, the one or two questions that was [sic] asked. However, I am going to allow the State to ask Officer Cooper directly about the — it was basically the first three sentences — let's see, one, two, three — the first three sentences of the affidavit. I think that is appropriate for the State to ask him about —

*Id.* at 139-41.

[39]     On redirect examination, the State then asked Officer Cooper the following:

Q. Officer Cooper back on May l7th 2016, [ ] did you and Officer Gough intend to speak with two black males about recent violent crimes in the city?

A. Yes.

Q. Did you intend to speak to those two individuals [ ] about a shooting that just recently occurred in the area?

A. Yes.

*Id.* at 157-58.

[40] Hillman argues that this conduct amounted to ineffective assistance of trial counsel. The PC Court, however, rejected Hillman's contention and found:

> While attorney Hennessy may have "opened the door" to additional, limited evidence by the State, this evidence was not so damning so as to deprive the defendant of a fair trial. Additionally, the introduction of the State's rebuttal evidence did not constitute a failing so severe as to render the result of the Petitioner's jury trial unreliable, or to otherwise constitute a reasonable probability that, but for counsel's unprofessional errors, the result of his trial would be different.

Appellant's App. Vol. IV p. 126. The PC Court found that Hillman was not prejudiced by Attorney Hennessey's action. We agree.

[41] The trial court allowed only limited redirect examination regarding the search warrant affidavit because of Hillman's counsel opening the door. The State merely elicited from Officer Cooper that they wanted to speak with Hillman

because they were searching for two unidentified black men regarding some recent violent crimes in the area. There was no indication that a rifle matching that found in the Alero was used in those crimes or that Hillman or Hawkins were suspects in those crimes. This evidence merely explained why the officers approached Hillman and Hawkins. Under these circumstances, we cannot say there is a reasonable probability that, but for trial counsel opening the door, the result of the proceeding would have been different. The PC Court's denial of Hillman's petition for PCR is not clearly erroneous.

## Conclusion

[42] The trial court properly admitted evidence found in the Alero as a result of the search warrant. The evidence is sufficient to sustain Hillman's conviction, and the PC Court's denial of Hillman's petition for PCR is not clearly erroneous. We affirm.

[43] Affirmed.

Kirsch, J., and Pyle, J., concur.