# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 20 2020, 8:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Cutis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darrin Banks,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 20, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2581<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Mark D. Stoner<br><br>Trial Court Cause No.<br>49G06-1804-MR-12372 |

**Brown, Judge.**

[1] Darrin Banks appeals his convictions for murder and battery as a level 5 felony. He raises one issue which we restate as whether the trial court abused its discretion by admitting a firearm and a phone seized pursuant to a search warrant. We affirm.

*Facts and Procedural History*

[2] On March 28, 2019, an argument occurred between Jasmine Webster, her sister Jada, and Daleah Banks. Jasmine and Jada planned to fight, and around midnight, they arrived at a location with their entourages. Renee Robson arrived with Jasmine, and Jasmine and Jada began fighting. At some point, Robson sprayed mace. The fight eventually involved other men and women. Eric Davis fired gunshots, the fight ended, and Robson returned home with others.

[3] At approximately 1:44 a.m. on March 29, 2018, Indianapolis Metropolitan Police Officer Donald Meier was dispatched to a call of shots fired, arrived at Robson's residence, and observed several bullet holes in the exterior of the home. Ana Fox and Robson's one-year-old child, M.R., suffered gunshot wounds, and M.R. died as a result.

[4] That same day, William Pargo called homicide, asked for the detective on the case, and said he had information about "the baby case." Transcript Volume II at 104. Pargo told Indianapolis Metropolitan Police Detective Jeremy Ingram that Banks and Brian Palmer were the shooters. Law enforcement obtained surveillance video which captured the shooting from a residence across the

street. Detective Ingram obtained a warrant for Banks's cell phone records and for a GPS device for Banks's vehicle. Pargo informed Detective Ingram that he would let him know when both suspects were in a vehicle with both weapons.

[5] On April 10, 2018, law enforcement pulled over Banks and Palmer in a brown Chevy Caprice after they failed to stop at a stop sign. Officers observed an AR pistol in plain view where Pargo said it would be located. On that date, Detective Ingram submitted an affidavit in support of a search warrant which referenced the March 29, 2018 shooting and the ongoing family dispute and asserted a confidential source stated he was close to both families involved in the original disturbance. Detective Ingram asserted the source stated that he was familiar with Banks and that Banks told him he shot at the house and showed him the gun. Detective Ingram also stated the source was credible and his information had resulted in multiple arrests and convictions with the seizures of narcotics and firearms. He asserted the source was able to record Banks making statements related to the shooting. He also stated that he knew Palmer drove a 1989 Chevy Caprice, law enforcement followed Palmer's vehicle and observed Banks enter the vehicle, and the source advised that Banks had his rifle that was used in the shooting in the vehicle. He asserted that law enforcement stopped the vehicle after a traffic violation and observed a rifle in the front seat in plain view. He requested a warrant to search Palmer's vehicle.

[6] That same day, the court issued a search warrant. A crime scene specialist recovered a cell phone, an Anderson pistol wedged between the driver and

passenger seats, and a rifle in the trunk. Banks signed a form advising him of his rights and admitted that he and Palmer had fired shots at the house.

[7] On April 17, 2018, the State charged Banks with murder as a class A felony and battery by means of a deadly weapon as a level 5 felony. On June 7, 2019, Banks filed a motion to suppress alleging that the search warrants were issued in violation of the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

[8] On July 11, 2019, the court held a hearing on the motion to suppress. Banks's counsel argued that Pargo never worked with Detective Ingram and, even if he did, it had been fourteen years earlier, Pargo had amassed eight criminal convictions for dishonesty, and Pargo was hoping to receive a benefit for his friend Willy Farrell. The court stated that, even if it found an omission existed, it would not be material or affect the probable cause.

[9] Detective Ingram testified that he worked with Pargo in 2003 and maybe 2004, Pargo had introduced him to drug traffickers and given him information on other cases, and he trusted Pargo. He stated that Pargo told him about his conversation with Banks concerning the shooting. He also stated Pargo took him by Palmer's house and identified the vehicles of Banks and Palmer, which he confirmed were registered to them. Detective Ingram testified that he conducted research and discovered Pargo and Banks were co-defendants in a case and hung out together. He testified that Pargo told him there were two people involved in the shooting and that a doorbell with a security camera

captured the shooting and showed there were two shooters. He also stated Pargo provided a recording of his conversation with Banks in which they discussed the shooting and further corroborated the information Pargo had told him. On cross-examination, he testified that he indicated to Pargo that his cooperation might help his friend, Farrell. He testified that he assisted Pargo to obtain a benefit for Farrell in a federal indictment and that Pargo had a pending case, which was dismissed on April 2nd as a result of his cooperation.

[10] At the beginning of a hearing on August 13, 2019, the court stated the motion to suppress was still under advisement. On August 15, 2019, the court continued the hearing and stated it did not believe that the record had shown a false statement and that Detective Ingram corroborated Pargo's story. The court stated the fact that Pargo asked for consideration was a material omission but that it did not believe the omission would have impacted the grant of the search warrant.

[11] On August 16, 2019, Banks filed a motion to suppress his statements. On September 23 and 24, 2019, the court conducted a bench trial. At the beginning of the trial, Banks's counsel mentioned the motion to suppress Banks's statement, and the court indicated it would continually take it under advisement. Banks's counsel renewed the motion to suppress based upon the stop and the belief that Pargo was not credible, and the court denied the motion.

The State presented the testimony of Robson, Fox, Detective Ingram, and other law enforcement officers. The State introduced and the court admitted Banks's statement to police. Indianapolis Metropolitan Police Detective Grant Melton testified that the phone recovered from the vehicle contained internet search history involving news stories of the incident in the hours after the shooting and a search involving the removal of fingerprints. A forensic scientist indicated that the nineteen recovered shell casings were fired by the Anderson pistol found between the seats of the vehicle. The court found Banks guilty as charged and sentenced him to consecutive sentences of fifty years for murder and three years for battery.

### *Discussion*

Although Banks originally challenged the admission of the evidence through a motion to suppress, he now challenges the admission of the evidence at trial. Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence. *See Jefferson v. State*, 891 N.E.2d 77, 80 (Ind. Ct. App. 2008), *trans. denied*.

We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. In reviewing the trial court's ruling on the admissibility of evidence from an allegedly illegal search, an appellate court does not reweigh the evidence but defers to the trial court's factual determinations unless clearly

erroneous, views conflicting evidence most favorably to the ruling, and considers afresh any legal question of the constitutionality of a search or seizure. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). "[T]he ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

[15] In ruling on admissibility following the denial of a motion to suppress, the trial court considers the foundational evidence presented at trial. *Id.* If the foundational evidence at trial is not the same as that presented at the suppression hearing, the trial court must make its decision based upon trial evidence and may consider hearing evidence only if it does not conflict with trial evidence. *Guilmette v. State*, 14 N.E.3d 38, 40 n.1 (Ind. 2014).

[16] Banks argues that the trial court abused its discretion by admitting the pistol and phone seized pursuant to a search warrant prepared with a reckless disregard for the truth by omitting material information essential to a finding of probable cause to bolster the credibility of the informant. He asserts that Detective Ingram omitted the following information: the remoteness of his relationship with Pargo, Pargo's criminal history, his aliases, his pending case, his parole status, and his request for consideration.[1] The State argues that Banks has not established that the detective engaged in a deliberate falsehood or

---

[1] In his motion to suppress, Banks mentioned Article 1, Section 11 of the Indiana Constitution. In his brief on appeal, he does not mention Article 1, Section 11 or provide an independent analysis of the Indiana Constitution.

reckless disregard for the truth by omitting information from the affidavit and that Banks has not shown that any such information would have changed the probable cause calculus.

[17]     The Fourth Amendment to the United States Constitution provides:

> The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. "Though a 'fluid concept,' probable cause exists when the affidavit establishes 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Heuring v. State*, 140 N.E.3d 270, 273 (Ind. 2020) (quoting *Illinois v. Gates*, 462 U.S. 213, 232, 238, 103 S. Ct. 2317 (1983)). "Probable cause to issue a search warrant exists where the facts and circumstances would lead a reasonably prudent person to believe that a search would uncover evidence of a crime." *Meister v. State*, 933 N.E.2d 875, 879 (Ind. 2010).

> In *Franks v. Delaware*, 438 U.S. 154, 171-72, 98 S. Ct. 2674, 57 L.Ed.2d 667 (1978), the U.S. Supreme Court held that a warrant is invalid where the defendant can show by a preponderance of the evidence that the affidavits used to obtain the warrant contain perjury by the affiant, or a reckless disregard for the truth by him, and the rest of the affidavit does not contain materials sufficient to constitute probable cause. *See Id.* at 171-72, 98 S. Ct. 2674. Furthermore, fruits of the search will be excluded just as if the

affidavit did not contain allegations sufficient to constitute probable cause. *Id.*, at 155, 98 S. Ct. 2674.

*Jones v. State*, 783 N.E.2d 1132, 1136 (Ind. 2003).

[18] "[M]istakes and inaccuracies of fact stated in a search or arrest affidavit will not vitiate the reliability of the affidavits so long as such mistakes were innocently made." *Darring v. State*, 101 N.E.3d 263, 268 (Ind. Ct. App. 2018) (quoting *Utley v. State*, 589 N.E.2d 232, 236-237 (Ind. 1992), *cert. denied*, 506 U.S. 1058 (1993)). "In addition to the inclusion of false or misleading testimony in the affidavit, the defendant may also establish that the affiant omitted information 'essential to a finding of probable cause.'" *Id.* (quoting *Keeylen v. State*, 14 N.E.3d 865, 872 (Ind. Ct. App. 2014), *clarified on reh'g*, 21 N.E.3d 840 (Ind. Ct. App. 2014), *trans. denied*). "In the case of an alleged omission, the defendant must establish that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting the information and show that probable cause would no longer exist if such omitted information were considered by the issuing judge." *Id.* "*Franks* protects only against omissions that are 'designed to mislead, or that are made in reckless disregard of whether they would mislead.'" *Id.* (quoting *Keeylen*, 14 N.E.3d at 872).

[19] The record reveals that Detective Ingram's search warrant affidavit asserted that the confidential source, who was later identified as Pargo, was "credible and reliable to this affiant which has included multiple arrests and convictions with the seizures of narcotics and firearms." Defendant's Exhibit C. Detective Ingram's affidavit further asserted that Pargo was able to record Banks making

statements and alleged that the firearm used in the shooting was in the vehicle, and the officers saw a firearm in the front seat of the vehicle after the stop. Detective Ingram testified that Pargo provided a recording of Banks in which he talked about the shooting. When asked whether Pargo had lied to law enforcement in his time working with him, Detective Ingram answered in the negative. We also note that the trial court stated:

> So the fact that the CS has information or has access to people committing criminal offenses or a criminal history themselves is hardly a surprise to the Court, and if I found it to be an omission, I still would not find it to be a material omission given the content of the rest of the information contained therein.

Transcript Volume II at 46.

[20] Based upon our review of the record, we cannot say that Detective Ingram engaged in a deliberate falsehood or reckless disregard for the truth in omitting the information or that probable cause would no longer exist if such omitted information were considered by the issuing judge. The admission of the evidence found during the search pursuant to the search warrant did not violate Banks's Fourth Amendment rights. *See Darring*, 101 N.E.3d at 270 (holding that, even if all of the "omitted evidence had been included in the affidavit, probable cause for the issuance of the search warrant would still exist").

[21] For the foregoing reasons, we affirm Banks's convictions.

[22] Affirmed.

Robb, J., and Crone, J., concur.